N. D. LEWIS, *et al.*, V. S. K. LINSCOTT.

1. CASE-MADE ; *No Amendment, When.* When a case-made for this court
   has been signed and certified by the judge of the district court who
   tried the case, it has passed beyond his control, and cannot thereafter
   be amended, altered, or changed by any order he may make.

2. EVIDENCE—*How Shown to be Wholly in Record.* In all cases where
   this court is asked to determine whether there is sufficient evidence
   to sustain a verdict or finding, and on all kindred questions, the
   record should show by an affirmative statement, or by such recitals
   as make it apparent, that all the evidence is preserved in the record.
   It is better that this should be done in the body of the record than in
   the certificate of the judge.

3. CONVEYANCE, *Fraudulent as to Judgment Creditors.* A conveyance
   made by a father to his children of all his available real and per-
   sonal property, and the delivery by a father to his son-in-law of a
   large sum of money, on the sole consideration of a promise by his
   children to pay certain scheduled indebtedness of the father, desig-
   nated in the schedule as his just debts, excluding therefrom the in-
   debtedness of the father to certain judgment creditors of whose
   demands the children had knowledge at the time of the conveyance
   and delivery of the money, is fraudulent and void as to such judg-
   ment creditors.

*Error from Jackson District Court.*

THE plaintiffs in error are *N. D. Lewis*, the father, and *Will-
iam O. Lewis, James B. Lewis, George A. Lewis,* and *Joseph
W. Lewis,* his sons, and *Elizabeth R. Locke,* his daughter, and
*A. M. Seaton,* a partner in business with N. D. Lewis. On
March 20, 1884, the defendant in error, *S. K. Linscott,* re-
covered a judgment in the district court of Jackson county,
against the firm of Lewis & Seaton, for the sum of $1,172.20,
and costs—the judgment bearing interest at the rate of 12
per cent. per annum. The costs now amount to over $100.
The action in which this judgment was rendered was founded
on promissory notes of Lewis & Seaton, given to *Linscott* in
May, 1883. An execution was issued on this judgment on
the 31st of March, 1884, and on the 1st day of April it was
levied on the following lands, alleged to be the property of

N. D. Lewis, in Jackson county, to wit: The N. E. $\frac{1}{4}$ of sec. 7, the N. E. $\frac{1}{4}$ of sec. 8, the S. E. $\frac{1}{4}$ of sec. 5, and the E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of sec. 5 — all in township 7, of range 16. On the 20th day of July, 1883, N. D. Lewis and A. M. Seaton, under the firm-name of Lewis & Seaton, made their promissory note to Bohart, Dillingham & Co., of Kansas City, for $1,000, payable in thirty days, with ten per cent. interest per annum. This note was assigned to the defendant in error Linscott, probably for collection, and on March 20, 1884, a judgment was rendered for the amount remaining due and unpaid on it, in the district court of Jackson county, for $716.40 and costs, with interest at ten per cent. per annum. An execution was issued on this judgment, on the 1st day of April, 1884, and was levied on the above-described lands, alleged to be the property of N. D. Lewis. These lands were appraised at an average price of $20.07 per acre.

On January 17, 1884, N. D. Lewis called his children together, and his attorney drew up, and they all signed, the following memorandum:

"JANUARY 17TH, 1884.— N. D. Lewis being in failing health, and in order to throw off the burden of business cares, makes the following disposition of his property and provision for the payment of his just debts, viz.: He owns the following lands in Jackson county: N. W. $\frac{1}{4}$ of sec. 8, township 7, range 16 — homestead; N. E. $\frac{1}{4}$ of sec. 7, N. E. $\frac{1}{4}$ of sec. 8, S. E. $\frac{1}{4}$ of sec. 5, E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ sec. 5 — town 7, range 16.

560 acres.
160
———
720

"He owns the following property in Colorado: S. W. $\frac{1}{4}$ of sec. 19, town 6 south, of range 65 west, and S. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, and N. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of sec. 24, town 6 south, of range 66 west.

"He owes in just debts as follows: The sum of $13,225. His homestead in Jackson county above described as the N. W. $\frac{1}{4}$ of sec. 8, town 7, range 16, is estimated to be worth about $7,000. His homestead he will transfer absolutely to his five children by way of advancement, namely, as a gift, provided his wife will consent thereto. The valuation of the remaining real estate in Jackson county, Kansas, is $11,725.

The valuation of personal property on said mentioned real estate is $1,500.

$11,725
1,500
———
$13,225

"The debts of said Lewis are $13,225. The design of N. D. Lewis is to make said last-described real estate pay off said just debts. The said Colorado lands are incumbered by a mortgage of about $2,750.

The value of said lands is about................... $3,700
The value of the cattle on said ranch is about..... 1,500

Making a total of property in Colorado.......... $5,200
Less incumbrance on ranch...................... 2,750
Actual estate in Colorado...................... 2,450

" It is designed to deed and convey the above property in Colorado to Celia Lewis, wife of N. D. Lewis, in consideration of her joining in the conveyance aforesaid if she will do so. The said Celia Lewis has refused to dispose of any Jackson county property, unless she is indemnified with property elsewhere, and the transfer of said Colorado property to her is in justice given her in consideration of the extinguishment of her right elsewhere in the nature of dower, as well as to repay her for moneys and property heretofore advanced by her in the acquisition of the Jackson county property.

" We have read over the minutes above made, and here attest to their correctness. By our hands, this 17th day of January, 1884.

NICODEMUS LEWIS.      GEO. H. LEWIS.
CELIA LEWIS.          J. W. LEWIS.
WILLIAM O. LEWIS.     JAMES H. LOWELL.
D. W. C. LOCKE.       W. S. HOAGLIN."
J. B. LEWIS.

Indorsed: "Memorandum of the transactions of N. D. Lewis with his wife and children."

"A SCHEDULE OF THE DEBTS AND LIABILITIES OF N. D. LEWIS.

One note and mortgage, dated ——, 18—, bearing —— per cent. interest, in favor of Francis A. White, for............... $3,000
One note and mortgage, dated May 3, 1881, bearing 8 per cent. interest, in favor of Mary A. Broddus, for................ 1,500
Interest, 80
One note in favor of J. H. Wilson, dated about the 1st of January, 1884, with 12 per cent. interest...................... 1,200
One note in favor of Holton City Bank, dated January 16, 1884, 500
One note in favor of Mrs. Clara Nichols..................... 1,320
One note given to Sid. Hayden about Feb. 1, 1883 — 12 per cent., 500
One note in favor of Valley Falls Bank..................... 1,500
One account in favor of Williams & Wenner.................. 135

| | |
|---|---:|
| One account in favor of G. F. King............................ | $130 |
| One account in favor of John Knopf........................... | 10 |
| One account in favor of Scott & Co........................... | 50 |
| Miscellaneous accounts, including attorneys' fees and claims.... | 500 |
| One note and mortgage in favor of one Newlin, upon lands in Colorado, amounting with interest to..................... | 2,800 |
| Total......................................... | $13,225 |

"We, the undersigned, children of N. D. Lewis, agree severally to assume the payment of the debts hereinbefore scheduled, as follows: (1) the said William O. Lewis, one-fifth thereof; (2) the said James B. Lewis, one-fifth thereof; (3) the said George H. Lewis, one-fifth thereof; (4) the said Joseph W. Lewis, one-fifth thereof; (5) the said D. W. C. Locke, husband of Elizabeth R. Locke, formerly Elizabeth R. Lewis, a daughter of N. D. Lewis, one-fifth thereof—the consideration for said assumption being the transfer to us of lands of said N. D. Lewis in Jackson county, Kansas, except the homestead or home place of said N. D. Lewis, and the sale and transfer by said N. D. Lewis to the undersigned of all the chattels and personal property belonging to the said N. D. Lewis, and situated and located on the farm of said N. D. Lewis in Jackson county, Kansas, except the household property.

"In witness whereof, we have hereunto set our hands, this 18th day of January, 1884.     WILLIAM O. LEWIS.
                                      GEORGE H. LEWIS.
                                      JAMES B. LEWIS.
                                      D. W. C. LOCKE.
                                      JOSEPH W. LEWIS."

"CONTRACT OF SALE OF PERSONAL PROPERTY FROM N. D. LEWIS TO W. O. LEWIS, et al.

"HOLTON, KANSAS, January 18, 1884.—For and in consideration of the sum of fifteen hundred dollars, to me in hand now here paid, I hereby sell, assign, transfer and set over unto William O. Lewis, James B. Lewis, George H. Lewis, Joseph W. Lewis and D. W. C. Locke the following-described personal property, to wit: Two yoke of oxen, four head of horses, one pony, one cow and calf, seven hundred bushels of corn in crib, three sets of double harness, one buggy, one two-horse wagon, all the saw-logs, wood and lumber, and all other personal property on the premises of the undersigned in Jackson county, Kansas, excepting only household goods.

Witness: JAMES H. LOWELL."           N. D. LEWIS.

Trial by the court, a jury being waived, at the November

Term, 1884. Before the trial the plaintiff made an application to amend the second cause of action in his petition, by interlineation showing that, instead of selling and assigning this judgment to Linscott for a valuable consideration, Bohart assigned it merely for the purpose of combining the two claims in the present suit. This leave to amend was granted. The court made findings of fact and conclusions of law as follows:

"1. The defendants, N. D. Lewis and A. M. Seaton, were copartners, as alleged in the plaintiff's petition.

"2. The defendants, N. D. Lewis and A. M. Seaton, for value received, made, executed and delivered to the plaintiff, and to Bohart, Dillingham & Co., all of the promissory notes in the plaintiff's petition described, in the amounts, at the times, and payable as therein alleged; and said note made to Bohart, Dillingham & Co. was by the payees thereof sold, transferred and indorsed to said W. H. Bohart, as alleged in plaintiff's petition.

"3. Said judgments in favor of plaintiff and in favor of said W. H. Bohart, were duly obtained on said promissory notes against said N. D. Lewis and A. M. Seaton, as alleged in plaintiff's petition.

"4. No part of said judgments, or either of them, has been paid.

"5. Executions were duly issued on said judgments, and for want of goods or chattels were each duly levied on the lands in the petition described, and proceedings were had thereon, and the executions returned as stated in the petition.

"6. On the 20th day of March, 1884, after the recovery of his said judgment against said N. D. Lewis and A. M. Seaton, the said W. H. Bohart for the purpose of avoiding a multiplicity of suits, by an instrument in writing duly assigned his said judgment to the plaintiff, S. K. Linscott, and thereby duly appointed him, the said S. K. Linscott, as his true and lawful attorney, to ask, demand and receive and sue out executions, and take all lawful ways for the recovery of the money due or to become due on said judgment, and to acknowledge satisfaction or discharge of the same, upon the understanding and agreement between said Bohart and the plaintiff that the second cause of action in plaintiff's petition alleged herein should be prosecuted by plaintiff in this action in behalf of said W. H. Bohart—the expenses and costs for which the plaintiff might be liable to be ratably apportioned between

and borne by said Bohart and plaintiff, as alleged in plaintiff's petition herein.

"7. On and before the 18th day of January, 1884, the defendant N. D. Lewis was the owner, and seized in fee, of all the following-described premises, situated in the county of Jackson and state of Kansas, to wit: The northeast quarter of section number 7, the northeast quarter of section number 8, the southeast quarter of section number 5, and east half of the southwest quarter of section 5, all in township number 7, of range number 16, containing 560 acres.

"8. On January 18, 1884, the defendant N. D. Lewis and his wife Celia Lewis, with intent on the part of N. D. Lewis to hinder, delay, and defraud his creditors, and especially the said Linscott and said Bohart, and without sufficient consideration, made, executed, acknowledged, and delivered to defendants William O. Lewis, James B. Lewis, George H. Lewis, Joseph W. Lewis, and Elizabeth R. Locke, who are children of N. D. Lewis and Celia Lewis, a deed for said 560 acres of land, which deed was on the same day recorded in the office of the register of deeds of Jackson county, Kansas. No part of the land described in said deed was at the date thereof the homestead of the grantors therein.

"9. Upon the first day of the term of court at which the judgments in favor of said Linscott and said Bohart were rendered, to wit, March 20, 1884, the lands above mentioned were incumbered with mortgages, which are still unsatisfied, and remain liens thereon as follows: One in favor of M. A. Broddus of $1,500, upon said northeast quarter of section number 7, township 7, range 16; and one in favor of F. A. White, of $3,000, upon said southeast quarter, and the east half of the southwest quarter of section number 5, township 7, range 16.

"10. Since the commencement of this action, and on or about June 25, 1884, the grantees in the deed of N. D. Lewis and wife to their children, conveyed to James H. Lowell and A. D. Walker the lands aforesaid, the said Lowell and Walker at the time being fully advised of all the circumstances under which the said N. D. Lewis and Celia Lewis conveyed said lands to their children, and said Lowell and Walker took said land subject to any claim that may be adjudged against the same in this action in favor of the plaintiff and said Bohart.

"11. There is now due on the judgment in favor of S. K. Linscott, including interest and costs, the sum of $849.65,

and on the judgment in favor of Bohart, including interest and costs, the sum of $1,288.20.

"12. The said A. M. Seaton is and at the time of the commencement of this action was insolvent, and had no property whereon to levy."

"CONCLUSIONS OF LAW.

"1. The deed set forth in the petition is fraudulent and void as against the rights and claims of the plaintiff and said W. H. Bohart, as said plaintiff hath in his said petition averred.

"2. Plaintiff is entitled to a judgment and decree ordering the lands described in the petition, or so much thereof as may be necessary for that purpose, to be appraised and sold subject to the mortgages found to be liens thereon, and the proceeds applied to the amounts due the plaintiff and Bohart on their judgments, and to the costs."

New trial denied, and judgment for plaintiff *Linscott.* The defendants have brought the case to this court.

*Lucien Baker,* and *Lowell & Walker,* for plaintiffs in error.

*Hayden & Hayden,* for defendant in error.

Opinion by SIMPSON, C.: The question of practice, presented by the record, first claims our attention. It affirmatively appears that, at the conclusion of the trial, the plaintiffs in error were allowed until the 1st day of April, 1885, within which to make and serve a case for the supreme court, and the defendant in error to have ten days thereafter to serve suggestion of amendments thereto. The case-made was served and acknowledgment of service indorsed on the 3d day of March. The case-made with amendments suggested was presented to the judge of the district court, and settled and signed by him on the 7th day of May, in presence of the attorneys of record on both sides. On the 9th day of May the plaintiffs in error served notice on the attorneys of the defendant in error that application would be made on the 12th day of May to have corrected the certificate of the judge to the case-made. On that day both sides appeared before the judge, and the defendant in error objected

25 — 37 KAS.

to the correction of the certificate, for the reasons: (1) That said case-made, having already been settled and signed, and ordered to be attested by the clerk as a case-made for the supreme court, the said judge has no jurisdiction to correct, alter and amend the same; (2) because it is not true that said case-made contains all the evidence. At the same time the defendant in error demanded in writing of the attorneys of the plaintiffs in error that the case-made be immediately filed with the clerk, and that he attest the same, and attach the seal of the court thereto. The judge granted the request of the plaintiffs in error, and found that the case-made does contain all the evidence in said case, and certified accordingly; to all of which the defendant in error duly excepted.

I. It is claimed by the defendant in error that the additional certificate of the judge attached to the case-made on the 12th day of May is without authority of law; that all control over the record, and all power to alter, amend and correct it ceased on the 7th day of May, when he settled and signed the case-made.    Numerous decisions of this court, commencing with the case of *Bartlett v. Feeney,* 11 Kas. 593, 602, and ending with that of *Wilson v. Janes,* 29 Kas. 233, 245, are cited to sustain this position.    The theory of these cases is, that after the judge has certified the case-made,

1. Case-made; no amendment, when. it passes beyond his control and cannot thereafter be amended, altered or changed by any order of

his.    In this case, some days subsequent to the certification of the case-made, a supplemental statement was added to the certificate, to the effect that the case-made contains all the evidence. This statement should appear affirmatively in the record in every instance.    In all cases in which this court is asked to determine whether there is sufficient evidence to

2. Evidence— how shown to be wholly in record. sustain a verdict, or a finding, and all kindred questions, the record should show by an affirma-

tive statement, or by such recitals as to make it apparent, that all the evidence is preserved in the record.    It is better that this should be done in the body of the record, than in the certificate of the judge.    The judge had no power to make the

supplemental certificate of the 12th of May, and yet his action in that respect does no material injury to the defendant in error, from the fact that it is apparent from the recitals of the record that it does contain all the evidence given on the trial of the case. The record shows that the plaintiff introduced certain testimony and then rested. "The defendant then offered testimony," and, after the recitation of the evidence of several witnesses, comes the expression, "Defense rests."

Plaintiff then has Wm. H. Webster sworn, etc.: "Plaintiff rests."

Defendant then offers in evidence, "and rests." Plaintiff here desires to recall one witness: "the court refuses to open the case;" "plaintiff rests." All these entries in the record, showing the regularity of the trial proceedings, are sufficient to indicate to our mind that the evidence is all contained in the record before us. (*Dewey v. Linscott*, 20 Kas. 684.)

II. Under our very liberal provisions respecting the amendment of pleadings, the district court had an undoubted right to make the amendment complained of. It was one that could not in its nature be very prejudicial to the rights of the plaintiffs in error. It was an almost immaterial question to them, whether Linscott owned the Bohart judgment absolutely, or whether it was assigned to him for the purpose of collection; in either case he could maintain the suit in his own name. It is not prejudicial to the rights of Lowell and Walker; they are not only purchasers *pendente lite*, but by reason of their relations to the plaintiffs in error they had knowledge of the circumstances under which these conveyances were made, and are not entitled to the favor and partiality which a court of equity always shows to an innocent purchaser.

III. This brings to us the real question of the case: What is the legal effect of the memorandum made on the 17th day of January, 1884, by Lewis and his wife and his children, and the bill of sale made on the 18th day of January, taking them all together, and construing them in the light of the evidence and surrounding circumstances? The exact facts are that N. D. Lewis, a man sixty-three years of age, owning

property which according to his own showing was in excess of his indebtedness, called his children together, made a statement to them of his financial condition, and then, in consideration of a promise by them to pay what he denominated his just debts, conveyed to them all his property, including his homestead, personal property and the sum of fifteen hundred dollars in money; and he did this at a time when suits were pending against him, that resulted in the rendition of these judgments represented by the defendant in error, there being no promise to pay these judgments in the obligation of the children, but these judgment creditors being carefully excluded in all these transactions.

We are called upon by the plaintiffs in error, the father and the children, to legalize the attempt to avoid the payment of these judgments. It matters not what may the legal characteristics of these transactions, whether the conveyances are assignments for the benefit of creditors, and void as to the defendant in error because not in compliance with our statutes, or whether they created a trust in favor of the creditors whose debts were scheduled, or whether they are void as against creditors upon their face, and without the aid of any extrinsic evidence showing that the transaction was fraudulent *per se:* their legal effect, if permitted to stand, would be that the acts and conduct of the debtor would necessarily result in defrauding the creditor who instituted this action. No view can be taken nor any construction given the memorandum and conveyances, with the accompanying acts and deeds of the father and children, consistent with the rights of the creditors, and with the duty and obligation of Lewis to pay his just debts. The property of the father was a fund out of which all his just debts must be first paid, before gifts, advancements or good bargains could result to the advantage of his children. The knowledge of the children, who are the grantees in the conveyances, and are to be the recipients of valuable property rightfully subjected to the payment of the grantor's debts, is abundantly shown in the record. In fact, taking all the circumstances together with the evidence, it is impossible to avoid

the conclusion that the children willingly aided the father in the attempt to so cover the property that it could not be subjected to the payment of the judgments sought to be enforced against it.

IV. It is said that the eighth finding of fact by the trial court is not sustained by the evidence, and will not support the first conclusion of law. In the first place, the written memorandum and the conveyances, being in evidence, what their legal effect is, was a question for the court. The plaintiffs in error having reduced their transactions to writing, and signed the memorandum, and having executed and received the conveyances, their part of the transaction was evidenced by the writing; and the court had the right, and discharged only its duty, by determining the legal effect of these writings; and as we have practically stated heretofore in this opinion, these of themselves are sufficient to authorize the finding of fact, and compel the conclusion of law. We do not believe that any disinterested person can read the testimony of the plaintiffs in error without being irresistibly led to the conclusion of fact as stated in the eighth finding. We are not disposed to consider in a technical spirit any of the questions arising on this record; we gather the facts from the whole record, and try, consistently with the rules governing such actions, to determine the abstract right in every suit. As a matter of fact, the record does not show a request for the separate findings of fact and conclusions of law. But we are bound to conclude that the trial court made such findings as appeared to be material to support the view taken. We have already said that the whole case is here; so that we can determine what was proven on the trial.

There are enough facts established by the testimony that all the children of N. D. Lewis, prior to and at the time of the making of the memorandum, and at the time of the execution and delivery of the conveyances of the homestead and other real estate, and at the time of the transfer of the personal property of Lewis to his children, and at the time he placed in the hands of Locke, his son-in-law, the sum of fifteen hun-

dred dollars, knew that the primary object of all these trans-actions was to prevent the payment by Lewis of the claims of Linscott and Bohart. There ought to have been a finding of these facts — they were necessarily embraced in the judgment; but because there is no special finding to this effect, this case should not be reversed and greater injustice done. There are findings enough to support the judgment, and these findings of themselves are sufficient to justify the legal conclusions as stated in the record. It is true that a debtor can prefer his creditor, and pay him to the exclusion of other creditors; but it is not true, and never was, that under the pretense of a sale a debtor can convey all his property to his children, who are not creditors, and thus prevent the application of the proceeds of a judicial sale of his property to the payment of his debts. When a man largely indebted conveys all his real and personal property to his children, and adds to this a large sum of money, it requires very strong proof to disabuse the

3. Conveyance, fraudulent as to judgment creditors.

mind of a natural inclination to conclude that the transaction was intended to defraud creditors. In this case all the inferences from the facts and every presumption of the law are against the plaintiffs in error, because the transaction in all its parts and bearings is an unusual one. It is rare indeed that a man of the age of N. D. Lewis would voluntarily give to his children all his available property and ready money at a time of life when more than at any other he needed it most, and when according to their own showing they were all reasonably well started in life. There can in the nature of things be but one explanation for such a transaction, and that is his desire to avoid the payment of the Linscott and Bohart judgments.

V. One other matter: We do not think there was any material error committed by the court below in refusing to permit Locke and others to answer the questions asked by the counsel for the plaintiffs in error respecting the memorandum and conveyances. The effort of counsel seems to have been to have the witnesses give their construction of this transaction. Locke identified the memorandum, said that he signed it, and

that the others signed it. The defendants offered it in evidence; and then began a series of questions, the object of which was to have the witnesses state the reasons why this property was conveyed to the children by N. D. Lewis. They were asked if it was not intended as a gift, and other questions, the answers to which would indicate how they regarded the transaction. The court sustained objections to all such questions, because it appeared that the transaction was reduced to writing, signed by all the parties, and was offered by them as the primary proof of the facts attending the conveyances. The legal effect of the memorandum and conveyances, viewed as parts of one entire transaction, was a question for the court, and not one about which interested parties could be permitted to express opinions as to what they believed them to be, or how they regarded them. We are bound by every consideration to recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.