## THE CHICAGO LUMBER COMPANY v. WILLIAM M. TOMLINSON *et al.*

1. CASE-MADE—*Power of Trial Judge.* The power of a trial judge over a case-made for the supreme court ceases after the same has been settled, attested, and filed, and a subsequent unverified certificate cannot be considered.

2. EXECUTOR—*Powers.* Without any showing of authority by the will or otherwise, the executor of the estate of a deceased person will not be held authorized to bind the estate by a new contract for the completion of a building for the erection of which the deceased had contracted, but the executor, being also an heir and interested in the property, may bind himself personally by any contract he authorizes.

3. MECHANIC'S LIEN—*Premature Statement.* Where no separate contract is made for the erection of a distinct portion of a building, a statement for a mechanic's lien filed before the completion of the building is premature and ineffectual.

4. SUPREME COURT—*Cross-Petition in Error.* Defendants in a trial court, who file cross-petitions asking affirmative relief against co-defendants, in order to obtain any relief in this court from an adverse decision below, must either join as plaintiffs in error or file cross-petitions in error here.

*Error from Finney District Court.*

THE CHICAGO LUMBER COMPANY OF KANSAS, a corporation, brought suit against William M. Tomlinson, Harry C. Lucas, executor of the will of Thomas Lucas, deceased, Silas T. Lucas, and others, heirs of said Thomas Lucas, and divers other parties having claims against the property, to recover a judgment against said Tomlinson and the heirs of said Lucas, and foreclose a mechanic's lien on certain lots in Garden City. The petition alleges that W. M. Tomlinson and Thomas Lucas entered into a contract with one J. A. Case for the erection of a two-story stone building on lots belonging to said Tomlinson and Lucas; that shortly after making the contract Thomas Lucas died; that Harry C. Lucas was appointed and qualified as executor of his will; that the deceased left as his heirs Agnes M. Lucas, Silas T. Lucas, Emma Lucas, Isabella Lucas McKinney, Amy Lucas Reeves, and said Harry C. Lucas; that S. T. Lucas was authorized by said executor and said heirs to represent the interests of said parties in the construction of said building; that said Case abandoned his contract before the completion of the building; that Tomlinson and S. T. Lucas, in behalf of said heirs, thereupon entered into a contract with the plaintiff, by the terms of which it was agreed that the plaintiff should furnish the lumber necessary for the completion of such building, and that said Tomlinson and said Lucases would pay the plaintiff both for the lumber thereafter to be furnished and for a part thereof which had been furnished under a contract with said Case. The petition also alleged the filing of a statement claiming a mechanic's lien on the 3d of September, 1887, and of an amended statement on the 6th of September. The first statement alleges that the materials were furnished under a contract with John A. Case, contractor, for the erection of said building, and with Callahan & Smith as his successors in the contract.˙ It does not allege any contract directly with the owners. The second statement avers a subsequent contract with the owners. The amended petition was filed on the 16th of July, 1888. On

the 30th of July, 1888, a demurrer on behalf of the defendants was filed by C. W. Morse, as attorney. Answers and cross-petitions were thereafter filed by J. A. Sankey, Felker & Ganschow, and Robert E. Gray. Various motions with .with reference to the pleadings were filed and passed upon by the court, and afterward an answer was filed by Harry C. Lucas and W. M. Tomlinson, which was verified by Tomlinson, denying generally the allegations of the petition. The case came on for trial at the February term, 1890, and was submitted to the court without a jury. The record recites: "And the plaintiff and the cross-petitioners in the cross-petition in open court called the attention of the court to the fact that the following-named defendants, to wit, Agnes M. Lucas, Silas T. Lucas, Emma Lucas, Isabella Lucas, Amy Lucas, and Amanda O. Tomlinson, were in default for the want of an answer, and the court thereupon noted a default as to each of the last-named defendants." The court, after hearing the testimony, at the request of Tomlinson and H. C. Lucas, answered certain questions submitted, among which are the following:

"1. Under what contracts, if any, did the Chicago Lumber Company furnish any building material that was used in the construction of building on lots 11 and 12, in block No. 36, during the months of March, April, May, and all that part of June preceding the 27th day, in the year 1887? A. Under a contract with J. A. Case.

"2. What amount of material and what was the value of the same furnished by the Chicago Lumber Company, if any, during the months of March, April, May, and all that part of June, 1887, preceding the 27th day, used in the construction of said building? A. Material to the amount and value of $747.98.

"3. To whom was the above material sold and delivered, if to anyone? A. To J. A. Case.

"4. Was any material furnished by the Chicago Lumber Company for said building that went into the construction of the same after the 27th day of June, 1887? A. Yes.

"5. What amount of material was furnished by the Chicago Lumber Company for said building after the 27th day of June, 1887? A. To the amount of $1,306.08."

"7. Under what contract, if any, did the Chicago Lumber Company furnish the material for said building after the 27th day of June, 1887? A. Under a contract made with Silas T. Lucas and Wm. Tomlinson.

"8. When was this last-mentioned contract made, if made at all? A. About June 27, 1887."

"13. If you find a contract was made by the defendants or either of them to pay the debt of Case to the Chicago Lumber Company, when was it made and with whom? A. About June 27, 1887, with S. Guerrier and John Cobry, by Silas T. Lucas and Wm. Tomlinson."

"15. Did the Chicago Lumber Company, by authorized agent or otherwise, cause to be filed a mechanic's lien against the property of the defendants, and if so, when was it filed? A. The only lien that was filed was filed September 3, 1887. The lien statement of September 6, 1887, was never filed.

"16. Did the Chicago Lumber Company, by authorized agent or otherwise, cause to be filed a second mechanic's lien against the property of the defendants in this cause, as described in the petition herein? A. No.

"17. If the court finds that two liens were filed by the plaintiff against the defendants, was the amount claimed to be due the same in both liens? A. Yes."

"20. What authority, if any, did Silas T. Lucas have ·to represent Thomas Lucas and the heirs of Thomas Lucas, and did S. T. Lucas receive additional authority after the death of Thomas Lucas? if he did, from whom did he receive it, and what was its extent? A. Thomas Lucas told Silas T. Lucas to 'go ahead and finish the building.' He had no other authority that could bind the estate."

"22. What interest, if any, has Silas T. Lucas in the described property? A. None whatever.

"23. In what way or by what title is the described property held by the respective defendants, and do they hold it jointly or severally? A. They held it severally.

"24. When was the building known as and called 'the Tomlinson and Lucas building' completed? A. About September 8, 1887."

"27. Did the defendants Tomlinson and Thomas Lucas, in his lifetime, contract with J. A. Case to furnish the materials and erect the building in question? A. No."

On the request of the plaintiff and cross-petitioners, the court made the following findings: .

"1. When was the first item of material furnished by plaintiff for the erection of the building in question? A. On the 21st day of March, 1887."

"3. When did Thomas Lucas die? A. In the latter part of March, 1887.

"4. Who had charge of the interests of the Lucas estate and heirs in said building after the death of Thomas Lucas? A. Silas T. Lucas.

"5. State whether or not Silas T. Lucas represented the estate of Thomas Lucas in the matter referred to in the last answer, and whether or not the expenses of said Silas T. Lucas were paid by the executor of said estate. A. He represented the executor, Harry C. Lucas, and his expenses were paid by the estate.

"6. Did not Silas T. Lucas and William M. Tomlinson, after the death of Thomas Lucas, meet at Garden City and jointly treat with and contract with the plaintiff and cross-petitioners? A. Yes.

"7. Please state the inducement, if any, that caused the plaintiff and cross-petitioners to complete their several contracts in regard to said building, if they did so complete them. State what benefits, if any, moved to the defendants, Tomlinson and Lucas's estate, Lucas's heirs, by the completion above referred to, and to either of them. A. They were promised by Silas T. Lucas and Wm. Tomlinson that the debts contracted by Case should be paid, and that all additional claims for labor and material should be paid."

"13. Did not the executor of the estate of Thomas Lucas account in his final report for disbursements made by said Silas T. Lucas in the erection of the building in controversy, and said Silas T. Lucas's expenses in looking after same? A. Yes.

"14. How much, if anything, is due the plaintiff for the material furnished, and described in the petition? A. $2,502.97."

The court found as conclusions of law that the plaintiff was entitled to a personal judgment against W. M. Tomlinson for the amount found due, but was not entitled to any lien, nor to any judgment against any of the Lucases, and

rendered judgment accordingly. The plaintiff brings the case to this court.

*Milton Brown,* and *·Valentine, Godard & Valentine,* for plaintiff and cross-petitioners in error; *Rightmire & Schenck,* of counsel.

*A. J. Hoskinson,* for defendants in error.

The opinion of the court was delivered by

ALLEN, J.: The defendant in error again challenges the case-made, on the ground that it was never served on the defendant. This question was raised by motion, and decided adversely to the defendant in error at the Febru-

1. Case-made—
  power of trial
  judge.

ary, 1893, session of the court. A supplemental certificate signed by the trial judge, dated February 4, 1895, without any attestation, has been attached to the case-made, but this cannot be considered. The jurisdiction of the trial judge terminated when he signed and settled the case, on the 23d of January, 1891. (*Lewis v. Linscott,* 37 Kas. 379; *Graham v. Shaw,* 38 id. 734.)

The trial judge held that Harry C. Lucas, as executor, had no power to bind the estate of his father, Thomas Lucas, deceased, for the completion of the building. Thomas Lucas was a resident of Allen county, Indiana. H. C. Lucas, the executor, resided in Chicago, and all of the heirs of the estate of Thomas Lucas were nonresidents of Kansas. Silas T. Lucas, although a son of Thomas Lucas, had received an advancement from his father amounting to more than his share of the estate, and therefore had no interest in the estate left by his father. He, however, looked after his father's interest in the contract for the erection of the Garden City building, at his father's request, prior to his death, and continued to look after the matter after his death. H. C. Lucas testified, among other things:

"Q. Have you not had correspondence with Mr. C. W. Morse, one of the agents referred to, in connection with this

building? A. The total business done down there was attended to by my brother.

"Q. Was done with your knowledge and consent? A. By my brother; yes, sir."

We think the testimony of H. C. Lucas, who was entitled to a share in his father's estate, and was therefore interested in the Garden City property, shows that S. T. Lucas, his brother, had authority to represent him, and make necessary contracts for the protection of his interests in the property. While he could not, as executor, without express authority in the will, bind the estate by a new contract, he certainly could bind himself, individually, as one of the parties in interest. As to the other heirs of Thomas Lucas, the record seems to show that C. W. Morse filed a demurrer in the case for them, which was overruled, and then made no further appearance. Just before the commencement of the trial, the court noted a default on the part of the Lucas heirs other than the executor, but the court seems to have tried the case as though H. C. Lucas, the executor, were defending for all of the heirs. The court held that S. T. Lucas had no authority to bind any of the heirs of his father, and denied a judgment against any of them, as well as refused a lien against the property. In the state of the record, and considering the manner in which the case was tried and disposed of by the court, we do not feel warranted in directing judgment against the heirs who are apparently in default. The proof relied on to show that S. T. Lucas was authorized to make any contract binding them is very weak if not absolutely wanting. It is urged by the plaintiff in error that the facts that the expenses of S. T. Lucas in looking after the business at Garden City were paid by the executor out of the funds of the estate, and that certain payments were made by his direction on the contract, and that the executor's final account showing these disbursements was assented to and accepted by all the heirs, show a ratification by them of all that was done by S. T. Lucas. But the settlement only shows payments made prior to the 27th of June,

*2. Executor—powers.*

when it is alleged the new contract was made for the comple-
tion of the building, after its abandonment by Case, and the
payments other than that of $100 to S. T. Lucas were made
in the name of J. A. Case, the original contractor. This
certainly does not show any ratification, by the heirs, of the
contract subsequently made by S. T. Lucas with the plaintiff
in this case. S. T. Lucas undoubtedly had power to bind
himself personally, even though he had no interest in the
property, and we think the evidence in the case shows he had
authority to bind H. C. Lucas so far as his interests were
affected, and that the court erred in denying any judgment
against H. C. Lucas.

The findings of the court show that the building was not
completed until about the 8th of September, while the state-
ment for the lien was filed on the 3d, and there-
fore premature. The court also finds that the
second statement was never filed. As the first
statement claimed only under a subcontract with
John A. Case, and with Callahan and Smith, as his successors,
the plaintiffs would be confined in their proof to what they fur-
nished under such a subcontract, and the court's conclusion of
law that the plaintiffs were not entitled to a mechanic's lien is
supported by the findings of fact. Of course, the plaintiffs
cannot successfully urge inconsistent claims. If the materials
were furnished by them under a subcontract with J. A. Case,
who alone contracted directly with Tomlinson and Lucas for
the erection of the building, their only remedy would be
against Case for a personal judgment, and against Tomlinson
and Lucas for a lien on the property only. The plaintiffs,
however, seem to have placed their main dependence on the
subsequent contract made with Tomlinson and S. T. Lucas,
and the amended mechanic's lien prepared by them and
claimed to have been filed on the 6th of September, but
which the court finds was not filed in fact, is framed on the
theory of this subsequent contract. If this statement was
not filed in fact, or was prematurely filed, before the comple-
tion of the building, the plaintiffs would not be entitled to

3. Mechanic's
lien — prema-
ture state-
ment.

any lien, but might be entitled to a personal judgment against such of the defendants as authorized the making of the new contract or subsequently ratified it.

The trial court found that there was due to the defendants who filed cross-petitions, for labor and material furnished for the same building, the following sums: J. A. Sankey, $1,111.96; Felker & Ganschow, $1,916.24; R. E. Gray, $537.50. Counsel for plaintiffs in error say in their brief: 'In behalf of the cross-petitioners, we submit their case upon the propositions announced by us in support of the petition in error by plaintiffs in error, for the same error permeates the ruling denying each of them a valid mechanic's lien." None of these parties appear in court as plaintiffs in error, nor has any cross-petition in error been filed by

**4. Supreme court —cross-petition in error.** either of them. They, therefore, so far as we are informed, have never had any case pending in this court, except so far as their interests might be affected by the decision of the case brought here by the Chicago Lumber Company. Their claims for affirmative relief are not before this court in any manner.

A petition in error has also been filed and separately numbered, referring to the same case-made, and complaining of the ruling of the court on a motion made by H. C. Lucas, as executor, to discharge the attachment issued in the action against the property of Thomas Lucas, deceased, on the ground, among others, that the evidence on the trial shows that the estate of Thomas Lucas is not liable upon the contract sued on in this action. Even if we were to treat the petition in error as properly attached to the case-made and entitled to consideration, there is no error in the ruling of the court on this motion. Under the evidence in the case, no attachment could be sustained against Harry C. Lucas, as executor, whatever the rights of the parties might be against the heirs interested in the estate. For the errors pointed out, the judgment must be reversed and a new trial ordered.

All the Justices concurring.