[No. 2296.]

THE TABOR-PIERCE LUMBER COMPANY ET AL. v. THE
INTERNATIONAL TRUST COMPANY SUB-
STITUTED FOR ANTHONY.

1. **Mechanics' Liens—Material Furnished—Intention.**

A lien cannot be maintained against the owner of a build-
ing for materials used in its construction that were furnished
the contractor in his own name, when the material man had no
knowledge of any contract relations existing between the con-
tractor and owner, or of the particular building to be con-
structed, but intended to hold the lien upon whatever building
the materials might be used in.

2. **Mechanics' Liens—Date of Contract Fixes Legal Right.**

Where the contract under which a sub-contractor claimed
a mechanic's lien was entered into prior to the time the
Mechanics' Liens statute of 1899 went into effect, he must
proceed under the law of 1893, although the building was fin-
ished and his statement filed after the law of 1899 went into
effect.

3. **Mechanics' Liens—Filing Statement Before Completion of
   Building.**

Under the mechanics' lien law of 1893, a statement of claim
filed by a sub-contractor before the completion of the building
on which he claimed a lien, was premature and of no effect, and
will not support a mechanic's lien.

*Appeal from the District Court of Arapahoe County.*

Mr. CHAS. M. BICE, for appellant, the Tabor-
Pierce Lumber Company.

Mr. WILLIAM KNAPP, for appellant, Carl F.
Kobel.

Messrs. TELLER & DORSEY, for appellee.

MAXWELL, J.

This was an action to enforce a mechanic's lien.
It appears by the pleadings and the evidence that
April 26, 1899, The Craft & Gilmore Building Com-
pany entered into a contract with Scott J. Anthony
to make certain repairs and alterations upon his resi-

dence at 1280 Logan Avenue, in the city of Denver. The contract price was $1,850.00, and the work was to be completed on or before the first of July of that year. The plaintiff, the Tabor-Pierce Lumber Company, furnished materials to the building company to the amount of $1,313.99, upon which there was paid $765.03, leaving a balance of $548.96, for which this suit was brought. Within the time and in the manner limited and provided by the statute relating to mechanics' liens, plaintiff filed its notice of intention to hold and claim a lien, and also served upon Mr. Anthony a notice of its intention to file such lien. Carl F. Kobel was made a party defendant, by reason of the fact that he had filed a lien upon the same property, for work done by him under a contract with the building company. At the close of the testimony for plaintiff, and also at the close of the testimony adduced in support of the Kobel lien, counsel for defendant Anthony moved the court for judgment in favor of the defendant, and against the plaintiff, which motion was granted. A like motion was interposed against the defendant Kobel, and likewise granted. Plaintiff below, the lumber company, and Kobel, prosecute this appeal. We will consider and dispose of the lumber company's claim first, and inasmuch as the disposition of this matter turns upon testimony introduced at the trial, it will be necessary to set forth so much of the testimony as is pertinent to this discussion.

Mr. Pierce, the secretary, treasurer and manager of The Tabor-Pierce Lumber Company, the only officer or employee of the lumber company introduced as a witness, testified as follows:

"Q. Now, as a matter of fact, whenever Craft & Gilmore came there and ordered goods, you sent them, didn't you?

A. Yes, sir.

Q. And you sent them just to the place where they told you to send them?

A. Yes, sir.

Q. And you knew nothing about where they were going, or for what they were had, except as they told you, did you?

A. That is all.

Q. Did you know at that time that they had a contract for a building with Anthony, when you first commenced to deliver goods?

A. I did not.

Q. Did you ever see the record of this contract in the recorder's office?

A. No, sir.

Q. You simply took their statement that they were going to do some work for Mr. Anthony, and you delivered these goods when they said so?

A. I don't know that they told me that they were going to do work for Mr. Anthony. They ordered lumber and told me where to deliver it.

Q. Then all you know about it is that they ordered the lumber and told you where to deliver it?

A. Yes.''

This witness also testified that at this time his company was selling lumber and building materials to the building company, and delivering the same at other places than the residence of Mr. Anthony, and that they had been selling lumber and building materials to Craft & Gilmore for some seven or eight years preceding this time. Further the witness testified:

''Q. So you was delivering lumber to these gentlemen or to this company whenever they told you to deliver it?

A. Yes, sir.

Q. And you were selling them lumber on credit?

A.   Some of it.   Some they paid cash for on delivery.

Q.   You was doing both a cash and credit business with them?

A.   Yes, sir.

Q.   And what you have stated of your method of selling to them is the method you have been pursuing heretofore with them?

A.   Yes, sir.''

The foregoing is all of the testimony in the record relating to the decisive question in this case.  The grounds of the motion for judgment do not appear upon the record, but it was stated upon oral argument, and is also stated in the printed briefs, that the point relied upon in support of the motion for judgment in favor of the defendant was, that the materials furnished by the lumber company were furnished upon the credit of the building company, and that at the time the materials were furnished, it was not known by the lumber company that such materials were to be used in the alteration and repair of this particular building.  Appellee relies upon this position here.  The act relating to mechanics' liens— Laws 1893, page 315—provides as follows:

''Section 1.   *   *   *   Material men   *   *   * furnishing materials *to be used in* the construction, alteration, addition to or repair   *   *   *   of any building   *   *   *   shall have a lien upon the property upon which they have   *   *   *   furnished materials,'' etc.

It seems to be well settled by the overwhelming weight of authority that a lien cannot be maintained against the owner of a building for materials used in its construction that were furnished the contractor in his own name, when the material man had no knowledge of any contract relations existing between the contractor and owner, or of the particular build-

ing to be constructed, but intended to hold the lien upon whatever building the materials might be used in.    The foregoing rule is supported by the following among a large number of other authorities:    *Roebling Co. v. Irrigation Co.,* 99 Cal. 488, 34 Pac. 80; *Johnson v. Simmons,* 123 Ala. 564; *Chapin v. Paper Works,* 30 Conn. 461, 79 Am. Dec. 263; *Colorado Iron Works v. Riekenberg* (Idaho), 43 Pac. 681; *Wendt v. Martin,* 89 Ill. 139; *Hill v. Sloan,* 59 Ind. 181; *Watrous v. Elmendorf,* 55 How. Pr. 461; *Choteau v. Thompson,* 2 Ohio St. 114; *Odd Fellows' Hall v. Masser,* 24 Pa. St. 507; *Whittier v. Puget Sound Co.,* 4 Wash. 666, 30 Pac. 1095; *Wagner v. Darby,* 49 Kan. 343, 30 Pac. 475.

Counsel for appellant have cited a number of cases as being in opposition to the rule above stated. A careful examination of these cases leads to the conclusion that they do not all support the point to which they are cited.

*Clark v. Huey,* 12 Ind. App. 224, 40 N. E. 152, is cited by counsel for appellant. This was an action of foreclosure of a mechanic's and material man's lien. Trial was to the court. A special finding of facts and conclusions of law was made, upon which a decree was rendered for a foreclosure of the lien. At page 232, the court said:

"It appears, from the special finding, that the appellee Huey furnished certain materials which were used in appellant's building, and that 'said materials were furnished at the request and on the order and credit of said Bartenick, the contractor, for said defendant, *to be used in the said dwelling house,*' and that proper notice of lien was duly filed. It also appears that Bartenick was building other houses, and materials for appellant's house, as well as those for the others, were charged to Bartenick in a general account, which appellees had against him. It does

not appear, however, that on this general account the materials for appellant's house were or were not indicated, the finding being silent as to this point. Thus it is, as it seems to us, clearly and unequivocally found that the materials were furnished to be used in appellant's house.   *   *   *   The other facts and circumstances contained in the finding are not, in our judgment, sufficient to overthrow the plain and distinct finding upon the essential fact that the materials were actually 'furnished,'—not purchased, but 'furnished'—to be used in appellant's house.''

*Emery v. Hertig,* 60 Minn. 54, 61 N. W. 830, is an authority in support of appellant's contention, as is also *Sodini v. Winter,* 32 Md. 130. *Wilson v. Howell,* 48 Kan. 150, 29 Pac. 151, also cited by counsel for appellant, upon examination, appears to be an authority against the position assumed by counsel for appellant. As the court says:

''If the material is sold on the personal credit of the purchaser, and without reference to what use he shall make of the same, no lien will attach; but if there is a mutual understanding between the parties that the material is furnished *to be used in* the construction of a particular building, and it is furnished and placed in such building, a lien will exist, although the exact description of the land on which the building was placed was not specifically named or accurately known by the vendor.''

In *Deatherage v. Henderson,* 43 Kan. 685, the court says:

''The right to the lien must be created at the time or before the material is furnished; it cannot be created afterward. It is the furnishing of the material under a contract with the intention and understanding that it shall be used in erecting the building, that creates the lien.''

So also in *Choteau et al. v. Thompson et al.,* 2

Ohio St. 114, it is said by the court at page 125:

"So, if a material man sell his wares with no understanding, express or implied, as to their application, he can assert no lien upon the building or vessel in which they may be placed. He trusts to the responsibility of the buyer alone, and takes no security. He sells, not for the special purpose named in the statute of 'constructing, altering or repairing,' but for any purpose that may seem best to the buyer. But it is only where the materials are furnished for a purpose named in the act that a lien is acquired."

A careful reading of *Hunter v. Blanchard,* 18 Ill. 322, fails to disclose, in the opinion of the court, any principle involved in this case. In *Cotes v. Shorey,* 8 Iowa 416, it is said:

."If the lumber was furnished from time to time and charged in account, as a merchant or shopman charges his goods, and there was no contract, agreement or understanding that it was to be used in the erection or reparation of a building, plaintiffs would not be entitled to a lien. To entitle the party furnishing the materials to a lien, it is not sufficient for him to show that he sold or delivered the defendant lumber company, without proof to establish the further fact that it was upon a contract that it was furnished, specially or for the purpose of being used for or about the building."

In *Neeley v. Searight,* 113 Ind. 316, it is said:

"The complaint is assailed because it does not show, so the appellant contends, that the materials, for the price of which plaintiff below claimed a lien, had been furnished by them *for* the erection of the house mentioned in the complaint. While the averments in that regard are not as direct and specific as they might have been, they are nevertheless sufficient. Relevant to that subject, the averments are to the effect that in the year 1883 the defendant, Mrs.

Neeley, employed William D. Gault to erect a dwelling house and other structures for her on her lot, which is particularly described, and that Gault procured from the plaintiffs certain materials to be used in the erection of the dwelling house, and that the materials so procured were thus used.  It is averred further that the plaintiffs at and before they furnished the materials to the contractor, notified the defendant that they were furnishing them.  Taking these averments all together, and the inference necessarily arises that the materials were furnished for, and used in, the erection of the dwelling.''

We have thus reviewed all the authorities cited by counsel for appellant to show that many of them are in support of the doctrine contended for by appellee, and others easily distinguishable from the case here; and that only two cases cited by counsel—*Emery v. Hertig* and *Sodini v. Winter, supra*—are opposed to that doctrine, while the overwhelming weight of authority is in support of it.  When the language of our statute is taken into consideration, to the effect that the material is *"to be used in* the construction,'' etc., ''of the building,'' in connection with the testimony of the witness Pierce, it seems that the conclusion is irresistible, that at the time the lumber company furnished the material for the building company, the particular building in which the material was to be used, was unknown to the lumber company, and the lumber company at that time did not know that the building company intended to do any work for, or had any contract with, Mr. Anthony.  In view of the testimony of Mr. Pierce it cannot possibly be seriously contended that the materials were furnished upon the credit of a building and contract which were unknown to the lumber company.  In *Small v. Foley*, 8 Colo. App. 435, this court said, at page 445:

"The statute gives any person who, by contract with the owner, shall furnish any material *for the construction of any building,* a lien upon the building and the land it occupies. He is not required to see that it actually goes into the building. *If by contract he furnished it for the building,* whether it is used there or not, he is entitled to a lien. This is what the statute says, and we cannot by construction distort its language to something else." ·

Applying the above to the facts of this case, it seems to be apparent that under our statute, the material man must, at the time when he furnishes his material, know that the material is *to be used in* some particular building, and in the absence of proof of this character, he has failed to establish his right to maintain a lien. It will not do to say in reply to the above, that there might have been officers of the lumber company who knew the necessary facts, or that they did know such facts from the method in which they did their business. If such was the case, it was incumbent upon the lumber company to produce this evidence at the trial. Failing to do so, we are of the opinion that they have failed to bring themselves within the requirements of the law, and that as to this branch of the case, the judgment of the court below should be affirmed.

Taking up the Kobel branch of the case, the testimony shows that Kobel was a sub-contractor for the galvanized iron and tin work, under the original contractor, the building company, and this contract must have been entered into previous to July 11, 1899, the date when the law of 1899 went into effect. To have perfected his lien, he should have proceeded under the law of 1893.—*Spangler v. Green,* 21 Colo. 505; *Small v. Foley,* 8 Colo. App. 438; *Chicago Lumber Co. v. Dillon,* 13 Colo. App. 196.

By the provisions of the mechanics' lien law of

1893, ''Every person, save the original contractor, claiming the benefit of this chapter, must, within thirty days after the completion of any building,'' etc., ''or after the completion of the alteration, addition to, or repair thereof,'' file for record with the county clerk and recorder of the county in which the property is situated, his statement claiming a lien. —Laws 1893, sec. 3, page 318.

The testimony in this case shows that the building was completed September 25 or 26, 1899. Kobel filed his lien statement with the county recorder September 15, 1899. This was fatal to the validity of the lien. When the statute says that the lienor must file his claim ''within thirty days after the completion of the building,'' a lien filed before such completion is premature, and of no effect.— Phillips, Mechanics' Liens, § 323a; *Roylance v. San Luis Hotel Co.*, 74 Cal. 273; *Willamette Co. v. Los Angeles College Co.*, 94 Cal. 229, 29 Pac. 269; *Chicago Lumber Co. v. Tomlinson*, 54 Kan. 770, 39 Pac. 694.

The judgment in favor of appellee and against appellant Kobel, for the above reason, must be sustained.

For the reasons above indicated, the judgment of the district court should be affirmed.

*Affirmed.*