**CYCLONE DRILLING & WORKOVER, INC., Appellant and Cross-Appellee,**

v.

**Don WOODS, d/b/a Woods Engineering Company; et al., (defendants)**

and

**Kiefer Pump & Supply, Inc., Appellee and Cross-Appellant.**

Nos. 57976, 58063.

Court of Appeals of Oklahoma, Division No. 1.

June 7, 1983.

As Corrected Oct. 20, 1983.

Rehearing Denied July 11, 1983.

Certiorari Denied Oct. 17, 1983.

Approved for Publication by Order of the Supreme Court Oct. 21, 1983.

James & Gilmore, P.C. by Richard James, Stroud, for appellant and cross-appellee.

Loeffler & Allen by Sam T. Allen, III, Sapulpa, for appellee and cross-appellant.

YOUNG, Judge:

Cyclone Drilling & Workover, Inc. (Cyclone) and other lien claimants brought an oil and gas lien foreclosure action against Don Woods doing business as Woods Engineering Company (Woods), owner of the Wild # 1 Lease. Cyclone subsequently joined Kiefer Pump & Supply, Inc. (Kiefer) as a party defendant alleging Kiefer had converted two tanks, a pumping unit and a gas engine from the leasehold estate. The lien claimants contend these items of equipment constituted a portion of the leasehold estate and were, therefore, subject to their lien claims. The court below held that the tanks were subject to the lien claims, but that the pumping unit and gas engine were not. The trial court also granted Cyclone attorney fees. Both parties appeal.

The undisputed facts establish that Woods obtained funding from Black Gold Investments, Inc. for the purpose of drilling and completion of "Wild # 1 Well". In November and December, 1979, Woods contracted with Cyclone and other service companies for materials, equipment, labor, and services in connection with development of the Wild Lease. During the month of December, Cyclone drilled the well and progress toward completion of the well as a producer continued into the months of December, 1979, and January, 1980.

In mid-January, Woods purchased two tanks, a pumping unit and gas engine on open account from Kiefer. The evidence shows that Woods bought this equipment specifically for use on the Wild Lease and that all of the equipment was physically taken and placed on the Wild Lease premises for a period of time. The tanks were delivered directly to the Wild Lease on or about February 8, 1980. The pumping unit and gas engine were initially taken to Woods's equipment yard for four or five days before they were taken to the lease premises on or about January 15, 1980. Approximately a week later, however, Woods returned the equipment to his equipment yard where it was stored "for safekeeping" because Woods did not want to leave it on the Wild Lease premises unattended.

Thereafter, the tanks remained on the lease premises and the pumping unit and gas engine remained in Woods's equipment yard until May 23, 1980 at which time all of the equipment was picked up by Kiefer with Woods's permission for credit on Woods's unpaid purchase price debt. Kiefer does not dispute the propriety of the duly filed liens against the Wild Lease and plainly concedes that if any liens had attached to this property, Kiefer would take it subject to those liens. However, Kiefer asserts that none of the equipment here in controversy ever became a part of the Wild Lease because the subject equipment was never physically used or employed in the development or operation of the Wild Lease. Consequently, Kiefer argues, Woods as individual owner of the equipment was legally competent to release it to Kiefer in consideration of Kiefer's release of the debt Woods owed for its purchase price.

The resolution of the problem presented by this undisputed factual situation requires a construction of the lien granting statute and its application in this context. 42 O.S.1981 § 144, in pertinent part, provides:

§ 144. Oil and gas well liens

Any person, corporation, or copartnership who, under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes, ... perform labor or services ... or furnish material, machinery, and oil well supplies ... shall have a lien upon the whole of such leasehold ... and upon the material and supplies so furnished, and upon any oil well supplies, tools and other articles used in digging, drilling, torpedoing, operating,

completing, or repairing any oil or gas well, and upon the oil or gas well for which they were furnished, and upon all other oil or gas well fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished or services performed. Such lien shall be preferred to all other liens or encumbrances which may attach to or upon said leasehold for gas and oil purposes ... subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies; and such lien shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found; and compliance with the provisions of this article shall constitute constructive notice of the lien claimant's lien to all purchasers and encumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor or services.

A close reading of the final two clauses in the above statute discloses that when an oil and gas lien is timely filed, it refers back and applies from the date the first item of material is furnished to the lease or the date the first labor or services are performed on the lease. Furthermore, by the terms of the statute itself, as well as the holding in *Brewer v. Oil Well Supply Co.*, 126 Okl. 108, 258 P. 866 (1927), a timely filed lien applies to all property which has become subject to the lien and removal of the property from the lease premises does not discharge the lien against the removed property. The uncontroverted facts of this case are that the first materials were furnished and labor was commenced on the Wild Lease in December, 1979, and the tanks, pumping unit and gas engine were all purchased and placed upon the lease premises subsequent thereto. It is also a fact that all lien claimants timely filed their claims in accordance with the applicable statutory directives. Therefore, if the oil and gas lien granting statute applies at all, it applies equally to the subject equipment in its entirety. The trial court erred in its

conclusion that if leasehold property is removed from the lease premises before the first lien statement is filed, the property is excluded from lien claims. The oil and gas lien statute gives lien claimants four months if the contract is with the owner, 42 O.S.1981 § 142, or ninety days if the contract is with a contractor, 42 O.S.1981 § 143, to file lien statements. Therefore, a claim filed within the applicable statutory period will cover all leasehold property to the same extent and it is immaterial whether the property is removed from the lease premises before or after a timely filed lien statement. Thus, our inquiry here does not turn upon the temporal sequence of events in regard to the physical location of the equipment, but whether the equipment in question ever became a part of the leasehold estate at all. We hold that it did.

The evidence is undisputed that all of the equipment was acquired specifically and exclusively for the development of the Wild Lease and it was brought onto the leased premises for employment in furtherance of that purpose. The pumping unit and gas engine were subsequently taken off the premises merely for safekeeping. Under these circumstances, we believe the language of the lien granting statute was satisfied at the time this equipment was furnished under the line of credit established by agreement between Kiefer and Woods specifically for the furtherance of, directed to and in contemplation of the Wild Lease as indicated by Kiefer on Kiefer's own bill of sale. We, therefore, find no reason why Kiefer should enjoy a superior claim to the equipment. No doubt Kiefer would have had a lien against the leasehold estate for the furnishing of the tanks, pumping unit and gas engine if it had timely filed a lien of its own. We find it highly illogical that the leasehold estate including the furnished equipment could be subject to a statutory lien claim by Kiefer but not subject to the identical statutory lien claims of other claimants who furnished equipment, labor and materials equally essential and necessary to the development of the Wild Lease. In *Wm. M. Graham Oil & Gas, et al. v. Oil*

*Well Supply Co., et al.,* 128 Okl. 201, 264 P. 591 (1927), our Supreme Court stated:

To hold that the statute gives to the one a lien for commodities furnished which become a part of the property, either by consumption in the use thereof or by attachment as a part of the equipment or machinery or otherwise, and that it denies to the other who likewise furnished commodities equally as essential and necessary as furnished by the one, though such commodities furnished by the other be not consumed nor become a part of the properties developed by attachment, and retain individuality, and be capable of further use upon completion of the immediate purposes for which they were purchased, is to say that the lawmaking body of the state acted in a most discriminatory manner in the enactment of the statute, when it is known as a matter of common knowledge that a large quantity of such necessary and essential commodities never become a part of the leasehold either by consumption or attachment thereto.

In *Graham, supra,* the Supreme Court further emphasizes that the applicability of the oil and gas lien statute is not based upon actual consumption or attachment of the challenged items, but upon their general use in digging, drilling, torpedoing, completing, operating, or repairing *any* oil or gas well:

In our view the language of the statute is not susceptible of either a limited construction or application with respect to the challenged items, for it is self-declaratory, in that any labor, supplies, materials, machinery "used in the digging, drilling, torpedoing, completing, operating, or repairing of *any* oil or gas well" is comprehended an lienable. *That such items must become a part of the property by either consumption or attachment is not the basis of the law; it is the use thereof.* The term "used", in its common meaning and acceptation, according to lexicons, means the employment of a thing for the accomplishment of a particular purpose. *No term of limitation was employed by the Legislature, if it was the intention*

*that the language of the statute was to have a restricted interpretation.* [Emphasis added.]

The case of *Nemeroff v. Cornelison Engine Maintenance Co.,* 369 P.2d 604 (Okl.1962), is in accord. In *Nemeroff,* the Court specifically held that the question is whether or not the equipment is furnished for the further development of the lease and not whether it was ever hooked up to and attached to the lease. The Court's holding is illustrative:

While the engine and drilling rig were never used on the lease after the labor was performed and the parts furnished in overhauling and repairing the engine, and the engine returned to the lease, we hold such labor and parts were furnished for the further development of the lease although, through no fault of Cornelison, the same was never again used on the lease. Therefore, Cornelison is entitled to a lien for the labor performed and the parts furnished.

Application of the lien granting statute and decisional law construing that statute requires a finding that under the facts and circumstances herein, all of the challenged equipment was subject to the lien claims asserted by Cyclone and other lien claimants. It was not necessary that this equipment become a part of the leasehold by consumption on the leasehold or attachment thereto. We find a sufficient nexus between the equipment and the Wild Lease. The leasehold owner held title to the equipment. It was specifically identified to the Wild Lease; it was intended for exclusive use on the Wild Lease; and it remained capable of being used or furnished for the furtherance and development of the Wild Lease. It is the intention of the law to create a lien upon the property of the contracting lease owner in favor of those having claims against the contracting lease owner, *Garber & Pulse, Inc. v. Gloyd,* 168 Okl. 88, 31 P.2d 947 (1934), and where such claimants have duly complied with the requirements mandated by the lien granting law, that intent will be upheld. Accordingly, we affirm the judgment of the trial

court granting Cyclone and other lien claimants a lien on the two tanks, but reverse the judgment insofar as it holds that Cyclone and other lien claimants do not have a lien upon the pumping unit and engine and enter judgment for Cyclone and other lien claimants for the value of the pumping unit and engine which the trial court found to be $10,500.00.

We now consider Kiefer's final assignment of error that the trial court improperly awarded an attorney fee to Cyclone. In *Lesh, et al. v. Branch, et al.*, 177 Okl. 211, 58 P.2d 578 (1936), the Oklahoma Supreme Court ruled:

> The holder of a materialmen's lien, in case of conversion of the property to which the lien is attached, is entitled to recover the amount of the lien, not to exceed the value of the property, together with costs and a reasonable attorney's fee as fixed by the court.

The order of the trial court awarding a reasonable attorney fee to Cyclone is affirmed and the cause is remanded for determination of an additional attorney fee in favor of Cyclone in connection with this appeal.

AFFIRMED IN PART;

REVERSED IN PART;

AND REMANDED WITH DIRECTIONS.

REYNOLDS, P.J., and ROBINSON, J., concur.