CLARKSON et al. v. WASHINGTON et al.

No. 2578.   Opinion Filed April 15, 1913.

(131 Pac. 935.)

1.   MARRIAGE—Indians—Per Verba De Praesenti—What Constitutes. Evidence examined, and held, that the same reasonably tends to support the finding of the court that there existed from the inception such an agreement between the parties in interest as was necessary to constitute a marriage per verba de praesenti.

2.   DOWER—Marriage—Presumption of Divorce—Action for Dower. Where pending the time a man and woman, citizens of the Creek Nation, were living together as husband and wife under a common-law marriage, the husband was convicted of a felony and sent to the penitentiary, and where, pending his confinement, the wife married another and after the death of her common-law husband brought suit for dower out of his allotment, held, in the absence of further evidence on the subject, that it will be presumed she was divorced from her common-law husband prior to her marriage with her second husband. Held, further, that as she was not the widow of the former husband she was not dowable out of his allotment.

3.   APPEARANCE—After Judgment—Effect. Where, in a suit in ejectment brought against a grantee to recover land conveyed her by warranty deed, judgment went against her administrator after her death and also over against her grantor for the price of the land mentioned in the deed as provided in Comp. Laws 1909, secs. 1205, 1206 (Rev. Laws 1910, secs. 1166, 1167), and where, after judgment, the grantor appeared and filed a motion to set aside the judgment and for a new trial, held, that he thereby entered a general appearance and validated the judgment, and that, too, notwithstanding any defect in the proof of

service of the notice prescribed by section 1205 and in the absence of service of summons on him.

(Syllabus by the Court.)

*Error from District Court, Okfuskee County;*
*John Carruthers, Judge.*

Action by George Washington, guardian of Emma Alexander, a minor, and another, against George Clarkson and another. Judgment for plaintiffs, and defendants bring error. Affirmed in part, and reversed in part with directions.

*A. A. Hatch,* for plaintiffs in error.
*C. B. Conner, J. E. Patterson,* and *C. W. Brewer,* for defendants in error.

TURNER, J. On October 16, 1908, George Washington, as guardian of Emma Alexander, a minor, and Mary Brooks, defendants in error, citizens of the Creek Nation, in the district court of Okfuskee county, sued Cynthia E. De Armond; in ejectment for what is conceded to be the allotment of Isaac Hawkins, a deceased Creek freedman. After answer filed defendant died, whereupon it was ordered by the court that the cause stand revived in the name of her administrator, Joseph De Armond, who for answer, adopted the answer of the defendant and alleged that, before the suit, by warranty deed, George Clarkson and wife had conveyed the land to said Cynthia for $1,200; that pending this suit, she had notified them to come in and defend their warranty; and prayed, in the event judgment went in favor of plaintiff for title and possession, that, for breach of their warranty, defendant have judgment against said Clarksons for said sum with interest, etc. After R. J. Dixon had made known to the court that he had sold and by warranty deed conveyed the land to the Clarksons, and by leave had intervened and filed answer, there was trial to the court and judgment for plaintiff; the court finding, in effect, that Emma Alexander was the minor child and sole heir at law of Isaac Alexander, enrolled and commonly known as

Isaac Hawkins, and, as such, was entitled to the land; that Mary Brooks was his widow and said Emma their child born in lawful wedlock; that said Mary is the wife of Alexander Brooks and was, under the law in force in that jurisdiction, at the time of descent cast, and still is entitled as dower to a one-third interest in said land for and during her natural life.

The court further found that title was derived by Cynthia E. De Armond as stated; that after service of summons on her, and more than twenty days before trial, notice had been served on the Clarksons to defend their warranty as stated; that the covenant for title thereby conveyed had been broken; and that Joseph De Armond, as administrator, was entitled to recover of George Clarkson said sum of $1,200, with interest from the date of his deed, and judgment was rendered and entered accordingly. After their respective motions for a new trial were filed and overruled, Clarkson and Dixon bring the case here. It is assigned that there is no evidence reasonably tending to support the finding of the court that Mary Brooks was the widow of Isaac Hawkins. On this point the evidence discloses that in 1898 Mary Brooks was a single woman of the name of Jefferson, living with her parents in the Creek Nation near Muskogee, and that Isaac Alexander, or Hawkins, was a single man living thereabouts; that at her father's house in that year Isaac told her "he wanted me to be his wife, and I told him it would be all right with me, ask my father"; that they immediately went into the presence of her father and mother and told the father they were going to get married, whereupon the father said "it was all right with him"; that they immediately left and went to live with Isaac's mother at Stillwater, then territory of Oklahoma, and lived there a while as man and wife, and then went to live at Bristow; that after living together two years as man and wife Isaac was arrested, convicted of a felony, and sent to the penitentiary for five years; that while he was in the penitentiary the plaintiff, Emma Alexander, was born to them, after which Mary was mar-

ried to one Brooks, with whom she still lives; that after Isaac got out he came to her house to see the child, and, after receiving his allotment, died.

As there is neither allegation nor proof that these facts would, according to the laws or customs and usages of the Creeks, constitute a valid marriage, the question is whether this was such at common law, the same having at that time been extended to and put in force in the Indian Territory by chapter 20 of Mansfield's Digest of the Laws of Arkansas (Ind. T. Ann. St. 1899, sec. 465q). The trial court held that such it was, and, as a result of holding her dowable in the lands, in effect, held further that her marriage to Brooks was bigamous; which, if true, will bastardize that issue.

As the evidence reasonably tends to support the finding of the court that there existed from the inception such an agreement between these parties as was necessary to constitute a marriage *per verba de praesenti,* the judgment of the court holding that a common-law marriage existed between them will not be disturbed, notwithstanding chapter 103 off Mansfield's Digest, entitled "Marriage" was in force in that jurisdiction at that time; as common-law marriages have been recognized in Arkansas from an early day.

In *Jones v. Jones,* 28 Ark. 19, appellant filed a bill in the circuit court as the widow of Elbert Jones to compel W. C. Jones, among other things, to set apart her dower as widow of the deceased. The court held against her presumably on the ground that she was not the widow. She claimed under a common-law marriage. In sustaining the judgment the court said:

"It is generally considered, in the absence of any positive statute declaring that all marriages, not celebrated in the prescribed manner, shall be absolutely void, or that none but certain magistrates or ministers shall solemnize a marriage, any marriage regularly made according to the common law, without observing the statute regulations, would still be a valid marriage. 2 Greenleaf, Ev. 417; 2 Kent, Com. 90, 91;

Reeve's Dom. Rel. 196, 200, 290; *Parton v. Harvey*, 1 Gray, 119; *Londonderry v. Chester*, 2 N. H. 268 [9 Am. Dec. 61]; *Cheseldine v. Brewer*, 1 Har. & McH. [Md.] 152; *Hantz v. Sealy*, 6 Bin. [Pa.] 405. * * * In a suit for dower, it is clear that an actual marriage, either under the forms and solemnities prescribed by the statute, or as prescribed by the common law, is necessary."

Rogers on Dom. Rel. sec. 89, says:

"In this country, at least it is the general rule that, in the absence of some positive statute or special law to the contrary, any marriage regularly entered into according to the course of the common law by the mutual consent of the parties, and recognition of each other as man and wife, is valid for all purposes."

In *Reaves v. Reaves*, 15 Okla. 240, 82 Pac. 490, 2 L. R. A. (N. S.) 353, the objection to the sufficiency of the evidence to prove a common-law marriage was raised, as here. There the court found as to the present agreement that:

"On the 25th day of June, 1890, H. H. Reaves and Frances A. Reaves were each competent to contract marriage, and did, at the said time, in the city of Guthrie, agree with each other that they would be husband and wife to each other, and did immediately begin living together and cohabiting together as married persons. That said marriage relations were entered into with the mutual consent of both parties, and that they immediately assumed all of the marital rights and obligations; and uninterruptedly exercised the same until the death of H. H. Reaves."

But the fact of her common-law marriage to Hawkins was not sufficient to justify the court in presuming that hence her marriage to Brooks was bigamous, which, in effect, he did when he held Mary to be the widow of Hawkins and as such was dowable out of his allotment. Rather should the court have presumed the other way and held that, although she was his common-law wife at one time, the presumption in favor of marriage then was that she had been divorced from Hawkins prior to her marriage with Brooks, and, not being the widow of Hawkins, could not recover. This for the reason, as

stated in *Coachman v. Sims et al.*, 36 Okla. 536, 120 Pac. 845, an able opinion by Ames, C., that:

"Marriage should not be destroyed on presumption. The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and stability of descent and distribution, and therefore presumes innocence and virtue, in the absence of proof."

And in the syllabus:

"When a man and woman have been living together as husband and wife for many years, and it appears that at the time of marriage the former wife was still living, in the absence of further evidence on the subject, it will be presumed that there had been a lawful separation or a divorce between the husband and the former wife."

We are therefore of opinion that Mary, while once the common-law wife of Isaac Hawkins, was not such at the time of his death, but had previously been divorced from him, and hence, not being his widow, was not dowable out of his allotment, and that the court erred in holding that she was.

It is next contended that the court was without jurisdiction to render judgment of recovery on the warranty in favor of the administrator over against Clarkson, the warrantor of Cynthia De Armond, because he says, not that the notice prescribed by Comp. Laws 1909, sec. 1205 (Rev. Laws 1910, sec. 1166), was not served on him, but because the proof is insufficient to show service. The notice itself is in evidence without objection and is certified to have been served on Clarkson by J. G. Frame, Constable. Assuming the insufficiency, as claimed, in the proof of the service of the notice provided for in said section, which reads:

"In all cases where an action is brought against a grantee to recover real estate conveyed to him by warranty deed he must notify the grantor, or person bound by the warranty, that such suit has been brought, at least twenty days before the day of trial, which notice shall be in writing and shall request such grantor or other person to defend against such action; and in case of failure to give such notice there shall be no further

liability upon such warranty, except when it is clearly shown that it was impossible to make service of such notice"—and that said Clarkson was not served with process, the fact that, after judgment went against him, as stated, he came in and filed a motion for a new trial, invoking the jurisdiction of the court to set aside the judgment, amounted to a general appearance and validated the judgment (*Welch v. Ladd,* 29 Okla. 93, 116 Pac. 573; *Lookabaugh v. Epperson,* 28 Okla. 472, 114 Pac. 738; *Rogers v. McCord & Co.,* 19 Okla. 115, 91 Pac. 864; *Farmers', etc., Bank v. First Nat. Bank, etc.,* 24 Okla. 140, 103 Pac. 685) rendered pursuant to the next section, which reads:

"Where any grantor applies (appears) in any action to defend his warranty or fails to appear after due notice, the court shall determine all the rights of all the parties, and in case the recovery is adverse to the warranty, the warrantee shall recover of the warrantor the price of the land paid for the conveyance at the time of the warranty, the value of all improvements lost, if any, and all sums necessarily expended, including a reasonable attorney fee, and interest at the rate of ten per centum per annum on all sums so paid from the time of payment."

There was no error in this. We are therefore of opinion that the judgment of the court in effect that Emma Alexander is the sole heir at law of Isaac Hawkins and, as such, entitled to inherit this allotment, and that the administrator of Cynthia De Armond, the warrantee, is entitled to judgment over against George Clarkson on his warranty for $1,200, is correct, and hence is affirmed; but in so far as the same holds Mary Brooks to be the widow of said Hawkins, the same is reversed, with directions to enter judgment in accordance with this opinion.

All the Justices concur.