## JAMES et al. v. ADAMS.

No. 5821.   Opinion Filed November 9, 1915.

Rehearing Denied March 21, 1916.

(155 Pac. 1121.)

1.   **DIVORCE — Marriage — Indian Customs.**   Marriages, contracted between tribal Indians according to the usages and customs of their tribe, at a time when the tribal government and relations are existing, will be upheld by the courts, in the absence of a federal law rendering invalid the laws and customs of the tribe.

   (a)   A dissolution of the marriage contract, according to such tribal laws, usages, and customs, will be likewise upheld by the courts.

2   **MARRIAGE — Validity — Presumption — Dissolution of Former Marriage.**   Where a man and woman have been living together as husband and wife for many years, and it appears that at the time of marriage the former wife was still living, in the absence of further evidence on the subject, it will be presumed that there had been a lawful separation or divorce between the husband and the former wife.

(Syllabus by Brewer, C.)

*Error from District Court, Carter County;*

*S. H. Russell, Judge.*

Action by Marswis James and another against Homer Adams.   Judgment for defendant, and plaintiffs bring error.   Affirmed.

*Drake & Drake,* for plaintiffs in error.

*H. A. Ledbetter,* for defendant in error.

Opinion by BREWER, C.   This controversy is over the allotment of Moses Anderson, a Choctaw Indian, who, it is alleged, was the son of Silas Anderson and a woman named Jincy.   The suit is brought by Marswis James and Simeon James, children of a deceased sister of Jincy. These persons are therefore cousins of the allottee on the

mother's side. ' Homer Adams claims title under deeds
from persons who, it is alleged, are children of Silas An-
derson and a woman named Amy. If Silas Anderson was
legally married to both Amy and Jincy when these various
children were born, then defendant Adams' grantors were
half brothers and sisters of the allottee, and therefore
took the allotment to the exclusion of the cousins, who are
plaintiffs. There is no question as to the law of descent,
and it is admitted that one or the other of these sets of
heirs took the whole estate upon the death of the allottee.

The status of the plaintiffs as cousins on the maternal
side of the allottee not being in dispute, we are only to
inquire into the status of the children of Amy, under whom
defendant claims. Whether they are half brothers and
sisters of the allottee, and therefore his heirs, depends
upon both them and the allottee being legitimate children
of Silas Anderson. Therefore, to support their heirship,
it must appear: First, that Silas Anderson and Amy,
their mother. were married, either by a ceremonial mar-
riage, or by tribal custom; and, second,. that Silas Ander-
son was likewise legally married to Jincy, the mother of
the allottee. If either the children of Jincy or of Amy
were illegitimate, then neither could inherit from the
other, under the claim of a common paternity. The rights
of defendant, Adams, claiming through Amy's children as
presented here, are based on the contentions:. (1) That
Silas and Amy were legally married by tribal custom,
without formal ceremony, and that therefore Amy's chil-
dren were legitimate. (2) That this tribal marriage be-
tween Silas and Amy was dissolved, through tribal cus-
tom, and that therefore Silas Anderson was free to marry
Jincy, and did so; thus making the allottee, Jincy's son,

also the legitimate child of Silas Anderson.   If both con-tentions are true, it follows that all of them are legitimate children of Silas Anderson, and are brothers and sisters, respectively, of the half blood.

It has been very generally, if not universally, held by the American courts that marriages contracted between tribal Indians, according to the laws and customs of their tribe, at a time when the tribal relations and government were existing, would be upheld, in the absence of a federal law rendering such tribal laws and customs invalid.  *Cyr v. Walker et al.*, 29 Okla. 281, 116 Pac. 931, 35 L. R. A. (N. S.) 795, citing *Morgan v. McGhee*, 5 Humph. (Tenn.) 13; *Earl v. Godley*, 42 Minn. 361, 44 N. W. 254, 7 L. R. A. 125, 18 Am. St. Rep. 517; *Wall v. Williamson*, 8 Ala. 48; *Johnson v. Johnson*, 30 Mo. 72, 77 Am. Dec. 598; *La Riviere v. La Riviere*, 77 Mo. 512; *Kobogum v. Jackson Iron Co.*, 76 Mich. 498, 43 N. W. 602; *Boyer v. Dively et al.*, 58 Mo. 510.  See, also, *Coachman v. Sims*, 36 Okla. 536, 129 Pac. 845; *Oklahoma Land Co. v. Thomas*, 34 Okla. 681, 127 Pac. 8; *Chancey v. Whinnery*, 47 Okla. 272, 147 Pac. 1036.

In *Buck v. Branson et al.*, 34 Okla. 807, 127 Pac. 436, 50 L. R. A. (N. S.) 876, the above rule is reaffirmed as to marriages, and it is also shown and decided that the same rule applies as well to the dissolution of the marriage con-tract.   On the last point, the syllabus, after stating the rule as to marriages, adds:

"And the same effect is also given to the dissolution of marriages, under the customs of the tribe, as is given to the marriage relation itself."

See that case for other authorities.

We will treat the two important questions of fact separately:

1. . The evidence is ample that the relations between Silas Anderson and Amy were not meretricious, but that they were husband and wife, under the custom of the tribe. There is some evidence even of a ceremonial marriage; but, laying this aside, the facts are undisputed that these full-blood Indians lived together openly for many years, continuously and without interruption; and that ten children were born to them while so living together, as a result of their union. So, we have no difficulty in deciding that the grantors of defendant in error were the legitimate children of Silas and Amy Anderson.

2. The question of the legality of the marriage between Silas and Jincy presents more difficulty. The case was not very well developed at the trial, probably because of the fact that most of the important witnesses were full-blood Indians; but it is not denied that Silas and Jincy were united in marriage ceremonially. The uncertainty arises over the question of whether or not he had a right —that it was competent—to marry Jincy. It is shown that, after living with Amy for many years, they quarreled and separated; and that afterwards Silas married Jincy and lived with, and raised a family by, her, one of the children being the allottee in this case. There is no proof that a divorce was granted between Silas and Amy; nor is there any proof, that we consider as having any probative effect, to show that they were not divorced. Neither is there any evidence of a tribal custom that a mere separation of a man and wife, mutually or without mutuality, would operate as a dissolution of the marriage contract, under the customs of the Choctaw Tribe. But,

although the situation is somewhat perplexing, yet, taking the evidence as a whole, certain facts stand out clearly; First, Amy's children were the legitimate result of a legal union of Silas and Amy; second, the allottee was born to Silas and Jincy, at a time when they were living together as man and wife, under a ceremonial marriage, a number of years after the separation of Silas and Amy. Evidently, each of these women believed herself a lawful wife while living with Silas.

Under these facts, the presumption would be that the first marriage had been legally dissolved before the second was entered into. Upon this point, the case of *Coachman v. Sims, supra,* appears to be a controlling authority. In fact, almost the identical question presented here existed in that case, wherein Ames, C., speaking for the court, said:

"Under the facts of this case, we are satisfied that, in order to uphold the validity of this marriage, in the absence of an affirmative showing that there had been no lawful separation, the presumption will be that a divorce had been secured. Marriage should not be destroyed on presumption. The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and stability of descent and distribution, and therefore presumes innocence and virtue, in the absence of proof. The wisdom of this presumption is rendered apparent by the facts in this case. This rule is well established by the authorities."

Many authorities are collected in the above case, and the rule announced therein has been reiterated in the following later cases: *Clarkson et al. v. Washington et al.,* 38 Okla. 4, 131 Pac. 935; *Haile v. Haile,* 40 Okla. 101, 135 Pac. 1143; *In re Love's Estate,* 42 Okla. 478, 142 Pac.

305, L. R. A. 1915E, 109; *Chancey v. Whinnery*, 47 Okla. 272, 147 Pac. 1036.

Applying the above rule, we must hold the marriage between Silas and Jincy was valid, and this results, of course, in the legitimacy of the allottee, Moses Anderson, as the child of Silas Anderson. It follows that, as both the children of Jincy and Amy by Silas were legitimate brothers and sisters of the one-half blood, respectively, Amy's children, in the absence of nearer relatives, were the heirs of their half-brother, the allottee in this case; and that therefore defendant in error, claiming under them, was possessed of the legal title to the lands involved, and that the court did not err in so holding.

The cause should be affirmed.

By the Court: It is so ordered.