Note.—See under (1) 28 Cyc. p. 1561 (Anno). (2) 28 Cyc. p. 1758. (3) 28 Cyc. p. 1567.

---

## OWENS v. CARPENTER et al.

No. 16996—Opinion Filed Oct. 19, 1926.

Rehearing Denied Jan. 18, 1927.

1. **Marriage—Effect of Federal Act as Legitimatizing Issue of Indian Custom Marriages.**

The congressional Act of May 2, 1890, legitimatizing the issue of marriages contracted in accord with the laws or customs of any Indian nation located in the Indian Territory, did not legitimatize the issue of marriages contracted in violation of the statutory laws and not authorized by any established custom.

2. **Same — Polygamy Never Recognized Among Chickasaws and Choctaws.**

Polygamy was never recognized as an established custom of the Chickasaw and Choctaw Nations, and the issue of such unions were not legitimatized by the Act of Congress of May 2, 1890.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by David Owens against Thomas L. Carpenter et al. Judgment for defendants, and plaintiff brings error. Affirmed.

R. L. Disney, for plaintiff in error.

H. A. Ledbetter, Johnson & McGill, and Champion, Champion & George, for defendants in error.

Opinion by JONES, C. This action was instituted in the district court of Carter county by plaintiff in error, as plaintiff, against the defendants in error, as defendants, for the purpose of quieting title in certain tracts of land, and for the cancellation of certain instruments purporting to convey title to said lands, and to determine the identity of all persons entitled to and interested in said lands, by reason of being heirs of Louina Alberson, nee Owens, and the proportionate part each was entitled to receive.

The facts, as disclosed by the pleadings and the evidence offered, disclose that a portion of the land here involved was the allotment of Solomon Alberson, a full-blood Chickasaw Indian, who died in 1903 or 1904, at the age of about four or five years, and left surviving him as his sole and only heirs at law Louina Alberson, nee Owens, his mother, and Ben F. Alberson, his father. The mother, Louina Alberson, died shortly after the death of the allottee, Solomon Alberson. It is conceded that Ben F. Alberson, the father, took a one-half interest in the lands in controversy by inheritance. which he subsequently conveyed to the defendants in this action, and that the mother, Louina Alberson, also inherited a one-half interest in said lands, and it is the interest inherited by Louina Alberson which is in controversy in this action.

Louina Alberson was survived by her husband. Ben F. Alberson, and by a maternal cousin, Agnes Dana, who is conceded to be the sole heir of Louina Alberson, in the event the said Louina Alberson was an illegitimate child, as contended by the defendants in this action. Louina Alberson was also survived by the plaintiff, David Owens, who is conceded to be her father, and the vital question to be determined in this case is whether Louina Alberson was a legitimate or illegitimate child of the plaintiff, David Owens. Louina Alberson was the daughter of Peggy Dana, and the plaintiff, David Owens, contends that he and Peggy Dana lived together as husband and wife, and that Louina Alberson was their legitimate daughter.

The record discloses that David Owens was first married by a custom marriage to a woman named Lizzie. that this marriage was dissolved by a custom divorce, simply by a separation and a dissolution of the marital relations between David and Lizzie, and thereafter David Owens was married to Shenoche. This marriage took place sometime prior to 1875, and seems to have continued up until the time of the trial of this case. In the latter part of 1875, or early part of 1876, David Owens, while living with and maintaining the marriage relations with Shenoche, attempted to enter into a common-law marriage agreement with Peggy Dana, and to this union Louina Alberson, nee Owens, was born. The undisputed facts show that David Owens, Shenoche, and Peggy, all lived together in the same house, and that there was born to David and Shenoche a son, Frank Owens, a short time prior to the agreement made with Peggy Dana. Peggy Dana lived with David and Shenoche for about two or three years, and appellees here contend that although this be a plural or polygamous marriage, the issue of such marriages are legitimate, and David Owens is an heir of Louina Alberson, nee Owens, entitled to inherit her interest in the lands involved.

Upon the trial of the case before the court, without the intervention of a jury, the court found in favor of the defendants and against the plaintiff, David Owens, from which judgment the appellant prosecutes this appeal, and sets forth various assignments of error, but the only question necessary for determination of this case is whether or not polygamy was an established custom among the Choctaw Tribe of Indians and the Choctaw Nation. If there was such an established custom, then under the Act of Congress of May 2, 1890, and section 2526, Mansfield's Digest of the Statutes of Arkansas, Louina Alberson, nee Owens, would be legitimatized, and David Owens would be an heir. On the other hand, if no such custom was ever established or prevailed in the Choctaw Nation, then it is clear that Louina Alberson, nee Owens, would be an illegitimate child, and no adoption ever having been made on the part of her father, David Owens, as required by law, he would not be an heir, and the appellees would be entitled to prevail in this action. The trial court so found, and we are inclined to the opinion that the judgment of the trial court is correct. Some evidence was offered tending to show that there was a practice among a few of the illiterate full-blood Indians of the Choctaw Nation, of living with two or more women, whom

they seemed to regard as legitimate wives, but there is no proof sufficient to establish a general or universal custom, which would authorize this court in holding that the Choctaw Indians practiced polygamy and recognized it as a legitimate relation.

The facts are undisputed in this case, that at the time David Owens attempted to enter into a common-law marriage agreement with Peggy Dana, he and Shenoche were living together, and had lived together for a number of years under a custom marriage agreement recognized by the Choctaw Tribe of Indians, and that this relation with Shenoche continued uninterrupted and unbroken up until the time of the trial of this case. Appellee calls attention to the fact that later, in about 1880, David and Shenoche were married by a ceremonial marriage, and that David adopted his son, Frank Owens, by a formal court proceeding, and these circumstances are cited as proof of the fact that the marriage relation did not exist between Shenoche and David at the time the agreement was made with Peggy Dana, but we do not regard these facts as evidence or proof of any illegitimate relation between David and Shenoche, but it is merely proof of a change of opinion or view on the part of these people, and an effort to bring themselves within the sphere of the more modern idea of what constitutes a marriage.

This court has heretofore passed on the legitimacy of custom marriages among the Indian tribes and custom divorces. In the case of Buck v. Branson et al., 34 Okla. 807, 127 Pac. 436, the court held:

"A marriage contracted between members of an Indian tribe, in accordance with the customs of such tribe, where the tribal relations and government existed at the time of such marriage, and there was no federal statute rendering the tribal customs invalid, will be recognized by the courts as a regular and valid marriage for all purposes.

"(a) And the same effect is also given to the dissolution of marriages, under the customs of the tribe, as is given to the marriage relation itself.

"(b) Such marriages are not to be treated as common-law marriages, but as legal marriages according to the customs of the tribe, when such customs are recognized by Congress as concerning and regulating the domestic relations of the tribe."

And this ruling of the court has been upheld in the more recent case of James v. Adams, 56 Okla. 450, 155 Pac. 1121, and under these authorities we think it clear that the marriage relation between David and Lizzie had been dissolved by a custom divorce at the time David and Shenoche entered into the marriage agreement; hence, their relation was lawful and they were legally husband and wife, and from the fact that this relationship continued unbroken at all times, the only theory upon which the relation between David and Peggy Dana could be legal would be to recognize polygamous marriages; and aside from a failure of proof to establish the custom of polygamy, the Choctaw Nation had specifically prohibited such marriages and outlawed same by an act passed by the Choctaw council and duly approved October 11. 1849:

"An Act Declaring Punishment for Polygamy.—Sec. 14. Be it enacted by the General Council of the Choctaw Nation assembled, that from and after the passage of this act, that any person or persons who shall be convicted of the crime of polygamy, or of living with each other in adultery, shall be liable to indictment before any court in this Nation, and fined, not exceeding $25, nor less than $10 for each of such offenses. Approved Oct. 11, 1849."

And such a practice was again condemned by an act of the Choctaw Council, which was approved October 5. 1860, and seems to have been re-enacted by an amendment in 1880 as follows:

"Section 1. Be it enacted by the General Council of the Choctaw Nation assembled, that all marriages which are prohibited by law, on account of consanguinity between the parties, or on account of either of them having a former husband or wife then living, shall, if solemnized within this Nation, be absolutely void, without any decree of divorce, or other legal proceeding."

And in 27 R. C. L. page 166, section 15, the following rule is announced:

"It is the generally accepted rule that any usage or custom in conflict with an existing statutory enactment is void."

The same rule is reiterated in section 12, Id., and under sections 8 and 9, Id., will be found a discussion of the essential elements to establish a valid custom, and among other things it is said that the knowledge of it must be notorious and general, and under these various authorities we conclude, in the first instance, that the proof wholly failed to establish a custom recognizing or authorizing polygamy in the Choctaw Nation, and second if there was such a custom it could not be recognized in the face of the statutory enactment of the Choctaw Nation.

Appellant further contends that, even though the marriage was unauthorized and illegal, the Act of Congress, heretofore re-

ferred to, of May 2, 1890, as follows, would have legitimatized Louina Alberson:

"Provided, that all marriages heretofore contracted, under the laws or tribal customs of any Indian Nation now located in the Indian Territory, are hereby declared valid, and the issue of such marriages shall be deemed legitimate and entitled to all inheritances of property or other rights, the same as in the case of the issue of (other forms of lawful marriages)."

We do not understand the purpose of the act to be to legitimatize the issue of marriages, except where entered into in good faith and in keeping with the law or a recognized custom, and this court has held in the case of Crickett et al. v. Hardin, 60 Okla. 57, 159 Pac. 275, in the first syllabus as follows:

"The purpose and effect of the provision of section 38 of the Act of Congress approved May 2, 1890 (Act May 2, 1890, c. 182, 26 Stat. 81), was to validate all prior marriages of the members of the Five Civilized Tribes, contracted in good faith according to either the express law, or the customs of the tribe, which for want of formality as to solemnization, registration, etc., might otherwise have been deemed invalid, and to legitimize and render the issue of such marriages capable of taking property and other rights by inheritance."

And in the case of Sealey v. Smith et al., 81 Okla. 97, 197 Pac. 490, this court held:

"Marriages contracted between tribal Indians, according to the usages and customs of their tribe, at a time when the tribal government and relations are existing in the absence of some statutory law governing and regulating said Indian tribes rendering such marriages invalid, will be upheld by the courts in this state"

—wherein marriages entered into in good faith according to the established usage and custom of the tribe are upheld, and in 17 C. J. p. 475, we find the following rule announced:

"A usage or custom cannot be recognized which is contrary to public policy."

And:

"A custom or usage repugnant to the express provisions of the statute is void, and whenever there is a conflict between a custom or usage and a statutory regulation, the statutory regulation must control, except perhaps in a case where a party whom it is sought to bind has expressly waived his rights under the statute. Alleged customs or usages have also been adjudged illegal for conflicting with the terms of charters or ordinances of municipal corporations or of the criminal or penal statutes of the state."

And in the case of In re Love's Estate, 42 Okla. 478, 142 Pac. 305, this court held:

"A common-law marriage exists where competent parties agree to be and become immediately man and wife, and pursuant thereto enter into and maintain thereafter the marriage relation."

And all the cases called to our attention, where the Act of Congress and statutory enactments of the various states, looking to legitimation, where the marriage ceremony or contract was not ceremonial and formal in every particular, are based largely upon the good faith of the parties entering into the contract, and where at least one of the parties was in absolute good faith, and no authority is called to our attention which holds that statutes such as are relied on by appellant will legitimize the issue of an unlawful marriage.

Appellant contends that this case should be reversed because of the fact that the court, in its findings and in the judgment rendered, found or referred to the relation between David and Peggy Dana as a marriage, and reasons from this premise that, if their relation constituted a marriage, under the Act of Congress and the Arkansas statute heretofore referred to, Louina would have been legitimized, but we take it that the court did not hold, and did not intend to hold, in referring to the relation between David and Peggy as a marriage, that it was a lawful marriage, and that it was a marriage entered into in good faith; hence, we find no merit in this contention. This court has recently passed on a similar case, where the rights of citizens of the Cherokee Tribe of Indians were involved, in the case of Henson v. Johnson et al., 117 Okla. 87, 246 Pac. 868, wherein the court held that by reason of the fact that the Cherokee Nation had enacted a law prohibiting polygamous or plural marriages, no custom could prevail in the face of these enactments.

Appellant cites many authorities in support of his contention, and calls special attention to the cases of Copeland v. Copeland, 73 Okla. 252, 175 Pac. 764, and Brokeshoulder v. Brokeshoulder, 84 Okla. 249, 204 Pac. 284, but from an examination of these authorities it will be found that at the time the second marriage relation was attempted to be established, there were no marital relations existing as a result of the former marriage. and that one of the parties to the second marriage contract had no knowledge of the former marriage, and hence acted in good faith.

Counsel for appellant appeals to the com-

mon knowledge of the court of the fact that polygamy was a recognized custom in the Choctaw and Chickasaw Nations. The writer of this opinion has been familiar with the history, customs, and traditions of the Chickasaw and Choctaw people from his earliest recollection, having spent a half century upon the border and within the Indian Territory, and it was always our belief and understanding that there was no such custom recognized by the Chickasaw and Choctaw Indians, or by any of the Civilized Tribes, but polygamy was recognized by custom and practiced to some extent by the Comanches and other western tribes, known as "blanket Indians," but not by the Five Civilized Tribes.

We therefore conclude that the judgment of the trial court was correct, and that the same should be and is hereby affirmed.

· By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 947, §18. (2) 7 C. J. p. 947, §18; 31 C. J. p. 487, §25 (Anno).