BREWER v. OIL WELL SUPPLY CO. et al.

No. 16694.    Opinion Filed Aug. 2, 1927.

(Syllabus.)

1. **Appearance—Effect of Filing Answer and Participating in Trial with Motion to Quash Summons Undisposed of.**

Where a party to an action enters a special appearance and moves to quash the summons or service because of alleged defects therein and without such motion having been disposed of files his answer and participates in the trial of the case, such action constitutes a general appearance which gives the court jurisdiction over the persons thus appearing.

2. **Equity—Jurisdiction to Administer Complete Relief.**

Where a court of equity has obtained jurisdiction of the controversy for any purpose, it will retain jurisdiction for the purpose of administering complete relief, and it may to this end determine purely legal rights which otherwise would be beyond its authority.

3. **Appeal and Error—Questions of Fact—Conclusiveness of Findings in Foreclosure of Statutory Liens.**

Where parties who have furnished labor and material for the improvement of an estate bring suit for the purpose of fixing and foreclosing a statutory lien upon said estate, and, where it appears that proper lien statements have been filed and suit to enforce the same has been brought within the time allowed by law, and where the issues are tried before the court to determine said liens and said court decrees their foreclosure and the special findings of the court with respect thereto are not against the clear weight of the testimony, the judgment of the trial court will be affirmed.

4. **Oil and Gas—Statutory Lien for Labor and Material Against Leasehold and Equipment—Lien not Defeated by Purchase and Removal of Equipment.**

The lien created by section 7464, C. O. S. 1921, in favor of laborers and materialmen for labor and material furnished, when proper lien statements have been filed according to law, attaches not only to the leasehold estate, but to the casing, fixtures, equipment, etc., used in the drilling operations, and the removal from the lease of the personal property upon which the lien fastens does not have the effect of discharging the lien allowed by law, and the purchaser of such material takes the same subject to such liens.

**5. Judgment Sustained.**

The evidence in this case has been examined, and the court finds that the same substantially supports the judgment.

Commissioners' Opinion, Division No. 2.

Two a'ctions (consolidated) brought respectively by the Oil Well Supply Company and H. D. Huycke to foreclose liens for labor and material upon oil and gas lease and quipment, and to exclude the interest of certain parties named defendants (C. W. Brewer and others). Judgment for plaintiffs, and defendant Brewer brings error. Affirmed.

West & Petry, for plaintiff in error.

Wright & Frerichs, Eugene B. Smith, Logan Stephenson, and Disney, Wheeler & Alcorn, for defendants in error.

BENNETT, C. A civil action brought by Oil Well Supply Company, plaintiff, against Malcona Petroleum Company, a corporation, Davis-Malcona Company, a corporation, and H. D. Huycke, defendants, No. 4490, in the district court of Okfuskee county, Okla., January 11, 1924, consolidated and tried with case brought in the district court of the same county and state, No. 4579, and entitled H. D. Huycke, Plaintiff, v. W. R. Davis, Security National Bank of Tulsa, Okla., J. W. Whitney, as Receiver of the Davis-Malcona Petroleum Company, a Corporation, and J. H. Whitten, Defendants. The petition in the first named case alleges the incorporation of the two defendants first named, and that H. D. Huycke is a resident of Tulsa, Okla.; that the two corporate defendants are and were the owners of a gas lease on the northeast quarter of the northwest quarter of section 18, township 10 north, range 12 east, in Okfuskee county, Okla., and that between March 15, 1923, and September 7, 1923, the two corporate defendants purchased from plaintiff machinery, equipment, and supplies, used by said defendants in the digging and drilling and operation of an oil well situate on the premises aforesaid, and that the agreed value of the goods sold was $680.43; that on December 1, 1923, and within three months after the furnishing of the material last named, plaintiff filed its lien statement in the office of the court clerk of Okfuskee county. Okla , a copy whereof marked Exhibit "A" is attached to and made a part of plaintiff's petition, and by reason whereof plaintiff claims a lien upon the leasehold and all machinery. casing. and equipment thereon, including a large amount of casing which was drawn from the well.

Plaintiff alleges, further, that H. D. Huycke has filed a lien statement for a mechanic's and materialman's lien against the same premises, the correctness and legality of which the plaintiff does not admit; plaintiff further prays for an attorney's fee of $125, and for judgment for the account, and that said judgment be declared a lien for foreclosure, etc.

W. R. Davis, the owner of the lease, filed a general denial and appeared no further. On May 5, 1924, plaintiff filed an amended petition, wherein they make C. W. Brewer a party, and it is stated that the plaintiff repleads and restates all the allegations of the original petition, and, further, that C. W. Brewer is a resident of Tulsa, Okla.; that the Malcona Petroleum Company and the Davis-Malcona Company. in drilling and operating for oil and gas on said premises, used 2.000 feet of ten-inch casing, and by virtue thereof plaintiff became possessed of a lien upon the same; and that the defendants, with full knowledge of said lien, removed said casing from said well, and that C. W. Brewer took possession of and converted the same to his own use, with full knowledge of said lien, and that said casing so converted was worth $2 per foot.

Wherefore, plaintiff prays judgment, as in its original petition, and for further judgment against C. W. Brewer, that the property last described be subjected to said lien, and in the event that the property was not forthcoming, for judgment against C. W. Brewer for the value thereof, and for other equitable relief.

On June 18, 1924. C. W. Brewer appeared specially and moved to quash the summons. for that the same was not issued, served, and returned according to law. On September 6, 1924. and without having his motion acted upon, C. W. Brewer filed his separate answer, consisting of a general denial; second, that the plaintiff has no interest in the property described in its petition; and, third, that the defendant is the absolute owner and has superior title to all of said property.

On December 1, 1924. H. D. Huycke filed his answer and cross-petition, consisting of, first, a general denial as to the petition of plaintiff. and, second, a cross-petition against C. W. Brewer; for his first cause of action says that on or about January 1st said Huycke entered into a contract with W. R. Davis to erect a drilling rig upon the property above described for the contract price of $3.300, the rig to be completed by January 20. 1923 and that said W. R. Davis owned the lease and leasehold on said premises; that the said Davis failed and refused to

pay the contract price when said Huycke completed the derrick within the time agreed upon, and that there is now due from the said Davis to the said Huycke $3,300, with interest at six per cent. from March 20, 1923. It is further stated that on the 17th day of May, Huycke filed his lien statement duly verified in the office of the court clerk of Okfuskee county, for the purpose of obtaining a lien upon the said premises, and he attached a copy of said lien statement to his pleading, marked the same Exhibit "A", and made the same a part thereof; and he further says that by virtue of said lien statement he became entitled to a lien against said leasehold and all the property thereon or used in connection therewith; and there is set out in the pleading a description of a considerable amount of property, including casing, and especially 2,000 feet of ten-inch casing, and 400 feet of 15-inch casing. He further alleges that there was removed from said premises by said Brewer, without the knowledge, acquiescence, or consent of said Huycke, 2,000 feet of ten-inch casing and 400 feet of 15-inch casing; and that the same had been converted and disposed of, or applied to his own use, by the said C. W. Brewer; and that the value of the converted casing was $4,000, and that he has a lien upon said property, and prays judgment against said Brewer for the conversion of said property, and for all other proper relief. On December 8, 1924, and without having his motion to quash passed upon, C. W. Brewer filed his answer and cross-petition to the cross-petition of H. D. Huycke, consisting of, first, a general denial; second, for answer and cross-petition against W. R. Davis, this defendant says that he purchased from W. R. Davis, and paid for, two carloads of oil well casing of the reasonable value of $4,000. He alleges that he is not advised as to whether or not this is the same casing upon which Huycke claims a lien, and therefore denies the same; but that if it shall be established that Huycke has a lien upon the same, then this answering defendant prays that he have and recover judgment over against his codefendant, W. R. Davis, for breach of his implied warranty of title to said property, to the amount of any lien or liens upon said property fixed by the trial court; and he prays further for costs of the action, and for all proper relief. On February 2, 1925, H. D. Huycke filed his reply to the answer and cross-petition of C. W. Brewer consisting of a general denial.

The petition in case No 4579, in substance, alleges that the plaintiff Huycke entered into a contract with W. R. Davis to build the derrick, as hereinbefore set out, and that he built the same, but that the defendant Davis refused to pay, and that on the 17th of May, 1923, the plaintiff filed his lien statement in the office of the court clerk of Okfuskee county, setting out the amount due, the names of the parties, and a description of the property; and claiming a lien upon all the above-described premises and property. He further alleges that J. W. Whitney, as receiver, J. H. Whitten, and the Security National Bank, claimed some interest in the premises. For second cause of action, in addition to the allegations of his first petition, he sets out that he made another contract with W. R. Davis for the repairing of the rig on the above premises, which had broken down, and that he completed the work on December 18, 1923, and became entitled to $1,024.48, as consideration for such labor and material; and that on the 17th of March, 1924, the plaintiff filed his verified lien statement in the office of the court clerk of Okfuskee county, and he attaches a copy of such statement to his petition, and makes the same a part thereof, and designates the same as Exhibit "A." Plaintiff further alleges that 2,000 feet of ten-inch casing and 400 feet of 15-inch casing, used in the drilling and operation of the well on said premises, has been removed from the premises, and was on the premises of J. H. Whitten at Bristow, and that said casing had been removed from said premises without his knowledge or consent, and asked for judgment against W. R. Davis for $3,300, with interest and attorney's fees, and upon his second cause of action, for judgment for $1,024.48, interest and attorney's fee, and that said amounts be adjudged to be a lien upon all the above-described property, and that the other defendants be adjudged to have no right or title in said property. Upon consolidation it was agreed that the cases should proceed and be tried under the name and title of cause No. 4490.

On the 2nd day of February, 1925, the parties appeared before the court, waived a jury, and tried the cause before the court. The court, having been requested to make special findings, found in substance the following facts: That on January 1, 1923, H. D. Huycke contracted with W. R. Davis to erect an oil derrick on the northeast quarter of the northwest quarter of section 18, township 10 north, range 12 east, for the sum of $3,300; said rig was completed January 20, 1923, and that on May 17, 1923, Huycke filed in the office of the court clerk, Okfuskee county, his mechanic's and materialman's lien statement; second, that on

the 20th of November, 1923, said Huycke entered into a contract with the said Davis to repair the rig on said premises, and he did so repair the same, between the 20th of November, 1923, and the 18th of December, 1923, and was to be paid $1,024, and that Huycke filed his lien statement on the 17th of March, 1924, with the court clerk of Okfuskee county, claiming a lien upon the premises. The court further finds that there is due from the Malcona Petroleum Company and the Davis-Malcona Company to the Oil Well Supply Company, for supplies used on the lease, the sum of $680.43 with six per cent. interest from the 7th of September, 1923, and that there is due and owing W. R. Davis, from the defendants Malcona Petroleum Company, and Davis-Malcona Petroleum Company, to H. D. Huycke the sum of $3,300, with interest thereon at six per cent. from the 20th day of January, 1923, upon the first cause of action and $1,024, with interest from the 20th day of December, 1923, for his second cause of action. The court further finds that the defendants placed in said well and used as a part thereof, among other things, a string of ten-inch casing, 1,800 feet in length, with collars thereto, and that, thereafter, on the 20th of November, 1923, the defendants Malcona Petroleum Company and W. R. Davis removed said casing from said well, and hauled the same to Weleetka, and shipped the same therefrom to Bristow, Okla.; and that on the 18th of December, 1923, the defendant C. W. Brewer purchased said casing, and also one car of casing piled upon the lease, and not removed therefrom, from the defendant W. R. Davis, and for which he paid $3,000, and that the said 1,800 feet of casing is worth $3,000; that C. W. Brewer had no actual knowledge of the fact that the casing so purchased by him had been used in the well upon the premises but that if the said Brewer had made reasonable inquiry he would have and should have discovered that fact. The court further finds, as a conclusion of law, that the Oil Well Supply Company is entitled to a judgment against the defendants Malcona Petroleum Company and Davis-Malcona Company in the sum of $680.43, with interest thereon from September 7, 1923, at six per cent.; that the defendant H. D. Huycke is entitled to a judgment against the defendants Malcona Petroleum Company and Davis-Malcona Company and W. R. Davis in the sum of $3,300, with interest thereon from the 20th day of January, 1923, at six per cent. per annum, and for $1,024, with six per cent. interest thereon from the 20th day of

December, 1923, on the second cause of action. And, as a matter of law, that the Oil Well Supply Company is the owner and holder of a good and valid materialman's lien upon the oil and gas leasehold above described, and upon the fixtures, appliances, and oil well supplies, and material thereon, in the sum of $658.28, and that H. D. Huycke is the owner of a valid lien upon the premises last described, in the sum of $3,300 upon his first cause of action; and $949 upon the second cause of action, and that said lien should be foreclosed and the property sold. The court further finds that the liens of the Oil Well Supply Company and H. D. Huycke are good and valid materialmen's liens upon the property claimed to be acquired by C. W. Brewer, to wit, 1,800 feet of ten-inch casing of the value of $3,000, and also upon the car of casing piled upon the lease, and not removed therefrom, and also upon all the other property hereinabove described.

The court further finds that the said C. W. Brewer purchased the casing last above described while the liens hereinbefore mentioned were attached to the property, and with constructive knowledge upon the part of Brewer of such liens. Such liens are declared valid upon the ten-inch casing held by defendant C. W. Brewer, and from such judgment defendant and cross-petitioner C. W. Brewer brings this cause here for review.

The defendant in his brief assigns error as follows:

(1) That the court erroneously overruled his motion for a new trial. This presents nothing, of course, for discussion unless his other assignments show error.

(2) That said court was without juridiction of C. W. Brewer to try the two transitory personal actions for damages for conversion because Brewer was a citizen of Tulsa county, wherein Brewer was summoned and the suit was brought in Okfuskee county; and

(3) That the court erroneously rendered judgment against C. W. Brewer, and the court was without jurisdiction to render such judgment.

Now as to his second assignment of error. Was the court without jurisdiction over C. W. Brewer because the action was transitory, and C. W. Brewer lived in Tulsa county where he was served with summons? A sufficient answer to this contention may be found in the fact that the defendant has waived his right to make any such conten-

tion. It is true that he first filed a motion to quash the summons on June 18, 1924. On September 6, 1924, he filed his separate answer, consisting of a general denial, and alleging that he was the owner of all the property described in plaintiff's petition, and that his title thereto was superior to any claim of the plaintiff therein and on September 8, 1924, C. W. Brewer filed his separate answer to the cross-petition of H. D. Huycke consisting of a general denial, and also alleging that all of this property belonged to him, and that his rights in and to the same were superior to those of the plaintiff. He also further pleads over against his codefendant W. R. Davis, alleging that he purchased certain casing from said Davis, and if it shall be adjudged that plaintiff has a lien for any sum against said property, that this defendant have judgment over for the same sum against his codefendant Davis.

Our court, in the case of Bronaugh et al v. John et al., 96 Okla. 164, 221 Pac. 32, pronounces the rule as follows:

"Where defendant in an action filed a special appearance and motion to dismiss for want of jurisdiction of their persons, but, without obtaining the ruling of the court thereon, filed a demurrer on nonjurisdictional grounds, such act on their part was a waiver of such special appearance, and constituted a general appearance in the action, and gave the court general jurisdiction over them for all purposes of the litigation." (Citing section 242, C. O. S. 1921; Burnham v. Lewis, 65 Kan. 48, 70 Pac. 337; Nichols & Shepard Co. v. Baker, 13 Okla. 1, 73 Pac. 302; St. Louis Cordage Mills v. Western Supply Co., 54 Okla. 757, 154 Pac. 646; Taylor, Adm'r, v. Enid National Bank, 77 Okla. 74, 186 Pac. 232.)

To the same effect see City National Bank v. Sparks, 50 Ok'a. 648, 151 Pac. 225; Trugeon v. Gallamore, 28 Okla. 73, 117 Pac. 797; Clarkson v. Washington et al., 38 Okla. 4, 131 Pac. 935.

In the opinion of the court in the Bronaugh v. John Case, supra, the court says:

"The averment in their answer that the court was wholly without jurisdiction of the persons of the defendants is of no avail, as they had already voluntarily subjected themselves to the jurisdiction of the court."

Perhaps the last opinion on the subject in this court is found in Locke v. First Nat. Bank, 121 Okla. 38, 248 Pac. 869, where the court uses the following words:

"Where a party to an action enters a special appearance, and moves to quash the summons or service because of alleged defects therein, and without such motion having been disposed of, files his demurrer or answer, and participates in the trial of the case, such action constitutes a 'general appearance,' which gives the court jurisdiction over the persons thus appearing."

In the last-named case, as in the instant case, the defendant answered, and asked affirmative relief, and his motion to quash was never disposed of. The foregoing authorities dispose finally of the contention of defendant that the court did not have jurisdiction; but the court might go even a step further. As appears from all of the pleadings in this case, this action was for the purpose of fixing a lien upon a certain lease in Okfuskee county, and, as well, fixing a lien upon the equipment, machinery, and casing used in the drilling and operation of a test well on the lease aforesaid. It would be idle to suppose that a court of equity, when called upon to determine these liens, the extent and the effect thereof, and the persons entitled thereto, would not acquire jurisdiction over the entire subject-matter so as to dispose of all the claims and interests in said property. When a court of equity acquires jurisdiction over a certain property its power to completely determine and settle all controversy with respect to that property is complete and comprehensive. De Roberts v. Town of Cross, 23 Okla. 888, 101 Pac. 1114; Mathews v. Sniggs et al., 75 Okla. 108, 182 Pac. 703.

In answer to the third assignment of error, that is, that the court erroneously rendered judgment against Brewer, and without jurisdiction to render the said judgment, the statement made with respect to the assignment next preceding applies. It is not quite clear to us how or why the judgment is claimed to be erroneous, or why the court did not have jurisdiction. Counsel for the defendant spends some effort to show that the suit is for a money judgment against the defendant C. W. Brewer. As a matter of fact the court did not render any money judgment against the defendant C. W. Brewer, and that question seems out of the way. It is true the plaintiff alleged that C. W. Brewer took possession of certain casing which had been wrongfully removed from the lease, and disposed of it or converted it to his own use. but, as we understand it, the plaintiff was seeking to have his lien fixed and adjudicated with reference to the lease the personal property and equipment on the lease. and also such of the equipment and property as had been wrongfully taken from the lease, and in order to do that effectually it was necessary to make those parties who had, or claimed, some interest

In the property, parties; and it will be noted that C. W. Brewer, in his pleadings, claimed title to a great part, if not all, the property described in the plaintiff's petition, and especially to the casing which he had bought from W. R. Davis, and asked the court to declare him the owner thereof and to declare that the plaintiff had no title thereto,

It was not contended in the oral argument, nor is it contended in the briefs, that the Oil Well Supply Company did not furnish the goods for which they sought a judgment, nor is it contended either in the argument or in the briefs that H. D. Huycke did not perform the labor and service in building the rig and in repairing the rig for which he sought judgment, nor was it contended that they did not file, within the time allowed by law, their lien statements with all formal requirements, so that it is certain beyond question, it seems to us, that these plaintiffs had a right to recover, and, under the evidence, were entitled to recover the exact amount for which they were given judgment. It is not denied that the suits to enforce these liens were brought within time, and, therefore, it is certainly true that they were entitled to a lien for the collection of their judgments upon the leasehold, the well and all of the casing, material and equipment used in drilling and completing the same, and, under the evidence, there is no question that these judgments and claims were unpaid.

Now, was the ten-inch casing bought by Brewer subject to this lien? W. A. Wilson testified that he hauled 82 joints of ten-inch casing for W. R. Davis from the Reddick farm in section 18, township 10 north, range 12 east (which is the land on which the well in question was drilled), on the 29th of October, 1923, to Weleetka, and loaded it on Frisco car No. 66037, and billed and shipped it to Bristow under shipper's order, bill of lading billed to himself, "notify W. R. Davis," and attached to the bill of lading a draft covering some prior debts and the hauling, and that he received the proceeds later on for the draft; that the car was in Bristow so long they thought Mr. Davis was not going to take up the draft, but that it was taken up finally; that the casing was what would be called one-run pipe.

J. H. Whitten exhibited a bill of lading which he testified Mr. W. R. Davis gave him, and that Mr. Davis told him to take it to Bristow and pay the freight on the car of casing which it called for, and unload it; that this was right at the last of October,

about 29th; that he came into Bristow a day after it was loaded at Weleetka, and that he unloaded it about 15 days later; that there were 82 joints of ten-inch casing and two nipples; that he hauled it to his yard, and that it remained there for quite a while, when it was loaded out and shipped to Tulsa; that Mr. Davis called him and told him that a man by the name of Brewer would get it, and to clean up the collars.

"Q. To whom did you deliver that casing in your yard? A. I have got his name, but it was for Mr. Brewer. Q. This gentleman here (indicating)? A. Yes, sir. Q. Mr. Brewer told you about the casing and told you he was buying it from Mr. Davis? A. I talked to him two or three times over the telephone and he told me he was about to buy it. Q. That casing was delivered by you to Mr. Brewer? A. The truck company; some boy came up and said Mr. Brewer sent him to get the car of casing. * * * I think I told Mr. Brewer that it belonged to Mr. W. R. Davis. * * * Q. He came there to buy the casing from Mr. Davis? A. That is what I understood, that he came to buy it from Mr. Davis. Q. And that is the casing that came on the car as indicated in that bill of lading? A. Yes, sir."

Mr. W. A. Wilson testified that the casing had mud on it and showed the effects of being pulled out of a well, and was rolled off of the end of the casing rack near the rig.

W. P. Reddick testified that he is the owner of the northeast quarter of the northwest quarter of section 18, township 10 north, range 12 east, where the well was drilled. He said that they had three strings of casing on that lease, eight, ten and twelve inches, and that all of them were used in the well, and thinks that Mr. W. A. Wilson hauled parts of the casing away.

Mr. C. W. Brewer testified that he bought from W. R. Davis about December 8, 1923, 1,800 feet of ten-inch casing and the collars; that the casing was at Bristow.

This evidence would seem to be conclusive that Mr. Brewer bought this ten-inch casing that came from the well in question, and, if so, it was subject to the lien of plaintiffs in this case, and the other casing which Mr. Brewer bought from Mr. Davis is now piled up near the well on the lease.

As a sort of dernier ressort the defendant contends that at the beginning of this suit he had disposed of the casing, and therefore that no judgment of any kind could be taken against him. This is a peculiar contention made in the teeth of his pleading that he owned this property, and that his right

thereto was paramount to that of the plaintiff, and also asking if the plaintiff should recover a judgment decreeing a lien against the property that he should recover judgment over against his vendor, W. R. Davis, for the same amount. The opening statement of his counsel at page 61 of the case-made also is significant:

"We think the evidence will show that we paid Mr. Davis in cash the full value of this casing as it stood. It had been held on the sidetrack at Bristow for nonpayment of freight, and had demurrage charges on it of 60 days when we bought it. He (Davis) said he couldn't pay the demurrage charges and would have to sell it as junk, and we bought and paid for it in cash, and we had not removed it at the time the suit was brought for the reason he told us he would soon need it in another well, and if we would hold it a while he would buy it back from us."

"The parties to an action, having presented their case, or defense, to the trial court upon a certain, definite theory, are bound thereby, and will not be permitted to change the theory of the case, either at any subsequent stage in the trial court, or in the appellate court upon appeal." Incorporated Town of Comanche v. Works, 69 Okla. 244, 172 Pac. 60.

Cross-complainants are concluded by the claim set up in their cross-complaint. Culmer et al. v. Caine et al. (Utah) 61 Pac. 1008.

It is a general rule in actions at law that, in order to enable the plaintiff to recover, or defendant to succeed in his defense, what is proved, or that for which proof is offered by the party on whom lies the onus probandi, must not vary from what he has previously alleged in his pleading; and that is not a mere arbitrary rule, but is founded on good sense and good law. El Reno Wholesale Grocery Co. v. Keen, 93 Okla. 198, 220 Pac. 653.

Justice Harrison, speaking for the court, in Chambers v. Van Wagner, 32 Okla. 774, 123 Pac. 1117, says:

"It is error to admit testimony in support of facts not put in issue by the pleadings, and, as a logical corollary, it is error to instruct the jury upon issues not raised by the pleadings." (Citing Newby v. Myers (Kan.) 24 Pac. 971). See, also, Tobacco Co. v. McGovern et al. (Mont.) 84 Pac. 709.

We have carefully examined all the evidence in this case, and we cannot but conclude that the findings of the court are amply supported by competent testimony, and we find no ground for complaint by the defendant. He bought from an embarrassed debtor a lot of mud-covered casing, which had evidently been used in a well, and, with the least inquiry, even from the railroad authorities on whose cars it was then loaded, he could have discovered where it came from. He took his chances and bought a bargain and two lawsuits, and, as between him, in this situation, and a supply company or a rig builder, who have pursued properly their legal remedy so as to give notice of their claims, it should not be hard to decide.

The defendant alleges also that Huycke comes into court with unclean hands by reason of the fact that he tore down, at the instance of the owner, a rig which he had formerly built, but for which he had not been paid, and, later, the material having been removed without his knowledge or consent, and finding the rig timbers and material many miles away in a different county and ready for erection, he took the job of rebuilding it there. We seem to find nothing unclean or unconscionable or unbuisinesslike in this performance, for all of which reasons the judgment should be sustained, and it is so ordered. Affirmed.

DIFFENDAFFER, HERR, JEFFREY, and HALL, Commissioners, concur.

By the Court: It is so ordered.